# Board of Education of Louisville v. Klein et al.

November 8, 1946.

W. T. Baskett and Woodward, Dawson, Hobson & Fulton for appellant.

Davis W. Edwards and W. W. Downing for appellees.

OPINION OF THE COURT BY JUDGE SILER—Reversing.

A permanent injunction was sought by Roy J. Klein and others, Louisville home owners, the appellees, against Board of Education of Louisville, the appellant, to prevent the erection of lighting equipment designed for night football games at Manual High School stadium and to prevent night usage of the stadium.

The chancellor granted the requested injunction and the Board of Education has appealed from his judgment.

The question before us is whether the injunction was proper under the proven facts and the prevailing law. And this depends upon whether appellees established the existence of a nuisance.

The injunction was granted in August, before any night football games whatever had been played. The pleadings indicate that the lighting equipment and similar improvements contemplated were to be used exclusively for these proposed night football games, all to be held under the supervision and control of appellant during a period of six weeks extending from late September until early November each year and during hours ranging from 7:30 p. m. to 10:30 p. m. and upon an average of two nights each week. Because night football games had not been held at appellant's stadium at the time of this suit, all the evidence that was produced related entirely to the irritations that had emanated to appellees from two particular situations of past experience, neither of which was the specific, identical thing sought to be enjoined in the instant case. The irritations of past experience sprang exclusively from (A) War Show exhibitions held during the recent hostilities, which exhibitions had used a different type of lighting equipment, and from (B) daytime football games held at the stadium for many years, which day games had used no lighting equipment whatever.

Although appellees constitute a group of more than 300 home owners who have their property investments in the neighborhood of this stadium and who work for a living, yet the equities of the case do not appear to be restricted to one side. For instance, all of appellee property owners have moved to the stadium neighborhood since the establishment of its present location and since the beginning of afternoon football games in the stadium. Again, it appears that the chief appellee making complaint has, near the stadium, a home that cost $6,650 in 1924 but which has now increased in value to a present worth of around $13,000. This increase, while undoubtedly accentuated by current inflationary tendencies, has nevertheless occurred in spite of anything that has hap-

pened at the stadium or that may reasonably appear to be likely to happen at the stadium in the future. Still further, it must be remembered that "The Youth of a Nation are the trustees of Posterity" and that these trustees of posterity should have the strong, healthy bodies that are developed in athletic contests that are held in stadia like that of the appellant.

The courts recognize two kinds of nuisances. One kind is a nuisance per se, that is a nuisance at law, and this kind is not permissible under any conditions, because the thing or situation complained of is within itself an outlaw lurking beyond the boundaries of legal sanction. The other kind is a nuisance per accidens, that is a nuisance in fact, and this kind, not being an outlaw within itself, will not be enjoined by a court judgment until the proven facts have marked it and stigmatized it as an offensive thing. See 39 American Jurisprudence 289; 28 Words and Phrases, Perm. Ed., p. 962.

This court has held that the operation of a ball park adjoining a private residence is not a nuisance per se, that is within itself, and that a baseball game cannot properly be considered a nuisance at law because a baseball game is a lawful and harmless activity if it is conducted in a reasonable manner. See Alexander v. Tebeau, 71 S. W. 427, 24 Ky. Law Rep. 1305. By the same token, a football game is not a nuisance per se and must be considered a lawful activity if it is conducted in a reasonable manner.

But the appellees point to a zoning ordinance of the City of Louisville which was adopted in 1931 and which was thereafter revised in April of 1946. They seem to contend that this zoning ordinance makes the operation of the appellant's stadium for night football games unlawful and therefore a nuisance per se. We are unable to agree with that viewpoint. The ordinance provides that this zone where the stadium is located may be used for high schools, and this should, we believe, be interpreted to mean any part of a high school, whether its gymnasium, class room building, athletic stadium or library. In the absence of a clause in the ordinance specifically rejecting high school stadia from this zone, we consider it proper to include them as logical parts of the high schools that have been specifically approved for this district by the terms of the ordinance. In the light

of all these circumstances, the court is unable to discern any unlawful thing, any nuisance per se, any nuisance at law, in the operation of this stadium for night, high school football games.

The next question is whether the proposed operation of the stadium for night football games constitutes a nuisance per accidens, that is a nuisance in fact, by reason of the circumstances and surroundings. The key to this problem seems to be hanging on the peg of that word, "proposed." There had been no night football games at the stadium when the injunction was granted. They were in a "proposed" or anticipated state. How can we, acting as an unbiased court, approve an injunction against a "proposed" situation, which is clearly not a nuisance per se nor unlawful within itself, upon the unsubstantiated theory that such situation may become a nuisance in the future by its unreasonable administration in the hands of imprudent men?

A structure erected upon an owner's land was held not to be a nuisance because it was capable of a use that might have made it a nuisance. Flood v. Consumers Co., 105 Ill. App. 559.

The question of nuisance vel non cannot be determined by reference to the rules of the common law, but each case must be considered on its own facts. A thing may or may not be a nuisance according to the manner in which it is used, the situation in which it is placed, or the time it has been carried on without complaint, when measured by the mind and taste of the average citizen. Densmore v. Evergreen Camp No. 147, Woodmen of the World, 61 Wash. 230, 112 P. 255, 31 L. R. A., N. S., 608, Ann. Cas. 1912B, 1206.

An auditorium in a residential locality was held not to be a nuisance, even though it did attract crowds and caused traffic congestion. Sheets v. Armstrong, 307 Pa. 385, 161 A. 359, 361.

It is the well-established rule that an injunction will not be granted against a threatened nuisance, when the thing complained of is not per se a nuisance, but may or may not become so according to circumstances. City of Richmond v. House, 177 Ky. 814, 198 S. W. 218.

From our statement of the principles and authori-

ties set out above, the conclusion may readily be reached that the night football games planned for appellant's stadium were not a proper subject of injunction before any annoyance whatever had developed to the detriment of the appellees. It is not equitable to presuppose that the managers, supervisors and administrators of appellant's stadium will permit night football games to be conducted in an unreasonable manner so as to irritate and harass the neighborhood. Rather, it should be optimistically hoped and expected that these people, who should be vitally interested in the continuation of the entire educational program of the appellant, will demand that the public and private conduct at the night football games will be such as to cause the least possible offense to the most sensitive of their neighbors in that locality. It has been aptly stated that "What we anticipate seldom occurs; what we least expected generally happens." If this is a true saying, the annoyances anticipated by appellees may never occur and the unexpected may happen to them through a reasonable and proper conduct of appellant's night football games.

We clearly do not mean to be understood as if we were closing the door in the face of appellees for any possible future injunctive relief against a situation that may hereafter require such relief. The conduct of night football games may become unreasonable and intolerable to the average householder, who is not at all hypersensitive in his impressions, living in this neighborhood. Under these conditions, a future injunction may become necessary and proper. But at the time of the chancellor's judgment, the granting of the injunction was erroneous. The injunction was untimely and premature.

Wherefore, the judgment is reversed for proceedings consistent herewith.