W. HARRELSON YANCEY, JOHN C. BODANSKY, ROY E. CRAFT, MAXIE
BRUNNEMER, BETTY F. HERMAN, HEBER K. BRUNNEMER, BERTHA
P. PARKER, LESLIE O. McCOLLUM, OTIS L. PEACH, CHARLES P.
LYTTON AND JOHN R. FALLS, PETITIONERS, v. RONALD M. HEAFNER,
CHIEF BUILDING INSPECTOR, AND W. R. HUSKINS, W. D. LAWSON, III,
DAN CRAIG, C. P. FALLS AND C. P. NANNEY, MEMBERS OF THE BOARD
OF ADJUSTMENT FOR THE CITY OF GASTONIA, RESPONDENTS.

(Filed 12 October, 1966.)

**1. Municipal Corporations § 25—**

A municipal board of adjustment has authority to permit the con-
struction of a football stadium, with lights and a seating capacity having
reasonable relationship to the size of the student body, ancillary to a
high school built in a residential zone permitting schools and colleges.

**2. Municipal Corporations § 34; Administrative Law § 4—**

A municipal board of adjustment, when sitting as a body to review a
decision of the city building inspector, is vested with judicial or quasi-
judicial powers, and a decision of the board, while subject to review by
the courts upon *certiorari*, will not be disturbed in the absence of arbitrary,
oppressive or manifest abuse of authority or disregard of law.

APPEAL by Petitioners from *Jackson, J.,* at 18 July, 1966, Civil
Session of GASTON Superior Court.

In 1961 the Hunter Huss High School was constructed upon a
54.51-acre tract of land owned by the Gaston County Board of
Education. The land on which the school is situated lies almost in
the center of a modern residential subdivision, known as Wesley
Park. This subdivision contains numerous residences in the $25,000
to $45,000 class. Both the school and the subdivision are located in
an R-12 Single Family Residential Zone which permits schools and
colleges, kindergartens and day nurseries, municipal, county, state
and federal uses not involving the outdoor storage of equipment or
materials.

On 1 March, 1966, the County Board of Education made appli-
cation with the Building Inspector for the City of Gastonia to con-
struct a 4,000-seat, concrete, lighted athletic stadium, as an ancil-
lary athletic playing field of Hunter Huss High School.

The petitioners, residents of Wesley Park whose residences al-
most "ring" the proposed stadium, protested to the Building In-
spector and a hearing was held. After hearing the evidence the
Building Inspector issued a permit for the construction of the stadium
and from his order the aggrieved property owners appealed to the
Board of Adjustment of the city.

On 7 April, 1966, the Board of Adjustment, after a public hear-
ing, unanimously affirmed the Building Inspector.

Subsequently the petitioners filed a petition in the Gaston Su-

perior Court for review by writ of *certiorari*. This writ was granted on 22 April, 1966.

On 20 July, 1966, the matter came on for review before Judge Jackson. After reviewing the record and hearing arguments of counsel, his Honor signed a judgment on that day affirming the action of the Board of Adjustment.

The petitioners excepted to the signing of the judgment and appealed to the Supreme Court.

*Frank P. Cooke for Petitioners, Appellants.*

*Garland & Alala by James B. Garland, Gaston, Smith & Gaston by Willis C. Smith for Respondents, Appellees.*

PLESS, J. The plaintiffs concede that education not only includes improvement of the mind but also improvement of physical faculties of students. The use of an athletic playing field in our modern day educational system has become an integral part of the school curriculum. In fact, we can find no authority which holds that athletic facilities, including stadia, are forbidden in zones where schools are permitted.

"The proposed condemnation of certain land to provide an athletic field for a high school was held not to violate the provisions of the zoning ordinance under which institutions of an educational character were permitted in a residential district on the ground that education was not a matter confined to the improvement of the mind, but might involve the development of a person's physical faculties, the grounds used for such purpose in connection with an educational institution becoming a part of the institution itself. *Commrs. of Dist. of Columbia v. Shannon & L. Constr. Co.* (1927) 57 App. D.C. 67, 17 F. 2d 219." 36 A.L.R. 2d 664.

"The ordinance provides that this zone where the stadium (high school) is located may be used for high schools, and this should, we believe, be interpreted to mean any part of a high school, whether its gymnasium, class room building, athletic stadium or library. In the absence of a clause in the ordinance specifically rejecting high school stadia from this zone, we consider it proper to include them as logical parts of the high schools that have been specifically approved for this district by the terms of the ordinance. In the light of all the circumstances, the court is unable to discern any unlawful thing * * * in the operation of this stadium for night high school football games." *Bd. of Education of Louisville v. Klein, et al*, 303 Ky. 234; 197 S.W. 2d 427.

The "little red school house" is a thing of the past, and today's modern schools have cafeterias, gymnasiums, laboratories, and other

facilities that were unheard of until recent times. Now, they are regarded as usual and necessary, and it is naturally to be expected that land appurtenant to a school building not now in use would be made serviceable in some manner. To establish extra baseball and football fields, tennis courts, etc., for a student body of 1,200 on its 54 acres would not be unexpected nor a violation of the zoning ordinances under consideration here. A grandstand to seat the spectators of a football game or baseball game is a natural adjunct to the ball field itself, and we do not interpret the plaintiffs' position as being of the opinion that the above acts and developments would be illegal. It then resolves itself into a question, as stated in the plaintiffs' brief, as to whether or not a stadium that would seat 4,000 people and which is lighted and the use of which may depreciate property values of the plaintiffs is a violation of the ordinance. It is a matter of common knowledge that a student body almost unanimously attends the athletic events where their teams are participating, and that their parents, too, become interested. With a student body of 1,200 and many of the parents attending, it would require almost the 4,000 seats to take care of them, and if the public generally and students of the opposing schools and their parents are to be seated, the capacity of 4,000 seats could not be held to be excessive. It is a rare thing when a football game or baseball game between high schools is played in the daytime. Practically all of them are played at night and, necessarily, lights are used. While the noise from the crowds and the lights will be disturbing to the people living close by, it must be recognized that when they purchased their property that a school, together with its attendant and necessary adjuncts, was permitted within the zoning ordinance. They can take some comfort from the fact that athletic seasons are short, contests will not be held every night, and most games will be completed by the ordinary hour for retiring. Considering the above, we cannot hold that the Board of Adjustment nor the lower court was in error in granting the permit.

We have found no North Carolina case that is applicable, but in *Property Owners Assn. of Garden City Estates, Inc., v. Board of Zoning App.*, 123 N.Y.S. 2d 716, it was held that a Zoning Board should have granted a permit to erect permanent stands in connection with an athletic field without limitation on the number of seats. From it we quote: "It is customary, whenever space is available, for colleges, and schools generally, to use a portion of their property for athletic contests, commencement exercises and other activities of like nature. The parties to these proceedings do not question the right of Adelphi (College) to make such use of its property but the property owner-petitioners and the Board seek to deny

Adelphi that which public schools concededly may do without permission — provide seats as an accessory use."

Also in *S. ex rel Tacoma School District v. Stojack*, 53 Wash. 2d 55, 71 A.L.R. 2d 1064, it was held that in the selection of a site for a senior high school the directors have authority to determine the area of land reasonably necessary to accommodate suitable buildings, playgrounds, student and related activities to establish an adequate school in accordance with present day educational requirements. 47 Am. Jur. Schools, Sec. 75, cites the above case, and also says: "The power of school authorities to provide gymnasiums and athletic fields and playgrounds has been sustained in a number of places."

"Zoning ordinances should be given a fair and reasonable construction, in the light of their terminology, the objects sought to be attained, the natural import of the words used in common and accepted usage, the setting in which they are employed, and the general structure of the Ordinance as a whole. * * * Zoning regulations are in derogation of common law rights and they cannot be construed to include or exclude by implication that which is not clearly their express terms. It has been held that well-founded doubts as to the meaning of obscure provisions of a Zoning Ordinance should be resolved in favor of the free use of property." Yokley, Zoning Law and Practice, Second Edition (1962 supplement), Vol. 1, Section 184.

This Court has held in several cases that a Board of Adjustment when sitting as a body to review a decision of the Building Inspector is vested with judicial or quasi-judicial and discretionary powers.

"The decisions of the Board of Adjustment are final, subject to the right of courts on *certiorari* to review errors in law and to give relief against its orders which are arbitrary, oppressive or attended with manifest abuse of authority. *In re Pine Hill Cemeteries, Inc.*, 219 N.C. 735, 15 S.E. 2d 1; *Chambers v. Bd. of Adjustment*, 250 N.C. 194, 108 S.E. 2d 211; *In re Appeal of Hasting*, 252 N.C. 327, 113 S.E. 2d 433; *Jarrell v. Bd. of Adjustment*, 258 N.C. 476, 128 S.E. 2d 879. The cited cases refer to an identical provision (G.S. 160-178) in the enabling act applicable to 'cities and incorporated towns'." *Durham County v. Addison*, 262 N.C. 280, 136 S.E. 2d 600.

The court found no error in the decision of the Board of Adjustment, and we agree with its action. The decision is

Affirmed.