WESTMINSTER HOMES, INC.; JOHN AND SUSAN EVANS; BAKULESH AND VADANA NAIK, Petitioners v. TOWN OF CARY ZONING BOARD OF ADJUSTMENT, Respondent, and JEFF AND LEIGH THORNE, Intervenor/Respondents

No. 499PA00

(Filed 9 November 2001)

**Zoning— municipal—conditional use permit—subdivision—installation of gates in a fence**

The Court of Appeals did not err by concluding that a conditional use municipal zoning permit may not be construed to allow residents of a subdivision within the municipality to install gates in a fence that serves as part of a buffer area between the subdivision and an adjoining neighborhood in order to allow the residents access to portions of their property located within the buffer, because: (1) the term "fence" as defined in the ordinance does not specifically provide for gates, and the term "gate" is not defined in either the ordinance or the permit itself; (2) only one gate is expressly mentioned in the permit to allow access to an

WESTMINSTER HOMES, INC. v. TOWN OF CARY ZONING BD. OF ADJUST.

[354 N.C. 298 (2001)]

easement for maintenance of the sewer by the Town, and petitioner corporation could have easily specified or bargained for additional individual access gates if it had originally so desired; (3) the permit states that the fence is to be the same architecturally as two existing fences, neither of which has a gate; (4) the language in the permit does not suggest the permission of residential access and use when it states the buffer will remain in its present natural and undisturbed condition except fencing and planting; (5) the language of the permit describes a desire for complete separation and privacy for the neighborhood; (6) the drawing of the fence which accompanied the plans submitted to the Town of Cary for the new subdivision did not include gates or an illustration of a gate; (7) the requirement of an undisturbed buffer strongly suggests that gates are not permitted; (8) even after petitioner corporation had subdivided the lots, it did not include gates for the anticipated homeowners until asked by the individual petitioners; (9) there is no reasonable basis for tort liability absent some willful action, and lack of access could potentially reduce petitioners' tax liabilities since the residential area of their lots is reduced in value; (10) as the property has now been subdivided and developed, residents of the subdivision would be left with substantially less than the privacy for which they bargained if gates were permitted under the permit after giving the full benefit of greater development to petitioners; (11) clear notice of the buffer area and fence was given in petitioners' deeds and the recorded plat; and (12) even if the issue of an unconstitutional taking of defendants' land was properly preserved, the Board's interpretation of this permit is not an unconstitutional taking of petitioners' private property since there was no imposition of new conditions on petitioners' use in this case.

Justice ORR dissenting.

Justice BUTTERFIELD joins in this dissenting opinion.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 140 N.C. App. 99, 535 S.E.2d 415 (2000), reversing and remanding an order signed 24 March 1999 by Cashwell, J., in Superior Court, Wake County. Heard in the Supreme Court 15 May 2001.

WESTMINSTER HOMES, INC. v. TOWN OF CARY ZONING BD. OF ADJUST.

[354 N.C. 298 (2001)]

*Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by Jim W. Phillips, Jr., and Kathleen M. Thornton, for petitioner-appellants.*

*Charles M. Putterman for intervenor/respondent-appellees.*

*The Brough Law Firm, by William C. Morgan, Jr., on behalf of the Town of Cary, amicus curiae.*

LAKE, Chief Justice.

The question presented for review in this case is whether a conditional use municipal zoning permit may be construed to allow residents of a subdivision within the municipality to install gates in a fence that serves as part of a buffer area between the subdivision and an adjoining neighborhood, in order to allow the residents access to portions of their property located within the buffer. The Court of Appeals held that such gates are not permitted. *Westminster Homes, Inc. v. Town of Cary Zoning Bd. of Adjust.*, 140 N.C. App. 99, 106, 535 S.E.2d 415, 419 (2000). For the reasons hereinafter set forth, we affirm.

In 1992, petitioner Westminster Homes, Inc., a residential housing developer, petitioned the Town of Cary to rezone various properties surrounding the Harmony Hill Lane neighborhood to allow for higher density residential subdivisions. Part of this property, designated Tract 3 on Wake County Tax Map 543, later became Westminster's Sherborne subdivision. Homeowners in the Harmony Hill neighborhood filed protest petitions against Westminster's request. After negotiations, which resulted in a formal legal agreement, Harmony Hill residents withdrew their protests, and Westminster agreed to certain developmental restrictions on Tract 3.

Westminster petitioned the Town to rezone its property in accordance with the agreement made with the residents of Harmony Hill. In February 1993, the Cary Town Council approved some of these restrictions as conditional use zoning permit Z-664-92-PUD. This permit provides, in part, as follows:

1. There shall be a 50 foot undisturbed buffer along the northern boundary of Tract 3 . . . . A seven-foot treated wood fence shall be constructed and maintained by the developer along the length of the undisturbed buffer where it adjoins Parcels 19, 20, 21, and 22, Wake County Tax Map 515. The fence shall be the same architecturally and of the same materials as the fence cur-

WESTMINSTER HOMES, INC. v. TOWN OF CARY ZONING BD. OF ADJUST.

[354 N.C. 298 (2001)]

rently existing between Preston Woods and the McLaurin Tract. The fence shall be located 45 feet off the property line . . . and it shall be connected to the existing gate over the sewer easement. The fence shall be installed with the minimum of disturbance to the buffer environment. The fence shall be connected at each end to the fences to be constructed under the respective agreements with Hester and McLaurin in order to preserve continuity and integrity. The fence will always be 45 feet from the boundary line or any property corner, and shall intersect at right angles. This fence will be constructed at the time that a grading permit is issued by the Town of Cary and be completed prior to recording any final plats. The integrity and maintenance of this fence will be the responsibility of the developer of Tract 3 or new owner. A deed disclosure and recorded plat shall be made by the developer so as to inform all new residents of the placement, integrity and maintenance of the new fence. Furthermore, a disclosure as to maintenance responsibility shall be part of the recorded plat and be subject to approval of the Town Council of the Town of Cary.

2. There shall be no utility crossings, sewer lines, or green-ways in the 50 foot buffer, except where the Town of Cary may require street or utility connections to Parcel 14, Wake County Tax Map 515. The buffer otherwise will remain in its present natural and undisturbed condition, except fencing and plantings.

3. . . . . Fast growing and evergreen trees such as Leyland Cypress shall be planted in a type "A" buffer standard to provide both optical and acoustical screening in front of the fence.

Thus, the permit requires, *inter alia*, that a "50 foot undisturbed buffer" be maintained between the Harmony Hill neighborhood and Tract 3, and that this buffer include a seven-foot high wooden fence offset forty-five feet from the rear property line of Tract 3, which abuts Harmony Hill. The "developer of Tract 3 or new owner" is responsible for the "integrity and maintenance" of the fence, and all new residents are to be made aware of the fence restriction through a deed disclosure and the recorded plat.

With the parties having settled their preliminary differences, plans for the Sherborne development proceeded. On 18 November 1993, the Town of Cary approved a plan for the Sherborne subdivision. In October 1996, intervenor/respondents Jeff and Leigh Thorne moved into the adjacent Harmony Hill neighborhood. On 5 February

WESTMINSTER HOMES, INC. v. TOWN OF CARY ZONING BD. OF ADJUST.

[354 N.C. 298 (2001)]

1997, Westminster filed the final subdivision plat for the Sherborne subdivision with the Register of Deeds. Both the plan approved in 1993 and the plat filed in 1997 showed that all the land in Tract 3, including the buffer zone, would be subdivided.[1]

In December 1997, petitioners John and Susan Evans and Bakulesh and Vadana Naik purchased lots and homes from Westminster in the Sherborne subdivision. Petitioners' lots abutted the intervenor/respondents' lot in the Harmony Hill neighborhood. Thus, the buffer zone runs along the back of and through petitioners' properties. Approximately one-half of the Evanses' lot and one-quarter of the Naiks' lot are part of the designated buffer area. Even so, these lots, excluding those portions which are in the buffer, are larger than many others in the Sherborne development.[2]

After the individual petitioners occupied their lots, they desired to access the portions of their respective lots located behind the fence in the buffer zone. In December 1997, petitioner Westminster, the developer of Sherborne, built a gate in the fence for the Naiks. On 13 January 1998, the Town staff with the Division of Planning and Zoning advised Westminster that gates were not permitted in the fence. In June 1998, the Evanses installed a gate in that portion of the fence in their backyard.

On 24 June 1998, a zoning enforcement officer for the Town of Cary sent letters to petitioners informing them that they were in violation of conditional use zoning permit Z-664-92-PUD because they had installed gates in the fence. Petitioners filed an appeal to the Town of Cary Zoning Board of Adjustment. On 10 August 1998, the Board of Adjustment held a hearing and heard evidence regarding the appeal, and residents of the Harmony Hill neighborhood, including intervenor/respondents, urged the Board not to allow gates in the fence. Ultimately, the Board upheld the zoning enforcement officer's

---

1. The Cary Zoning Ordinance now states that "[n]o buffer in a residential subdivision shall be wholly owned (in fee simple absolute) by the owner of an individual residential building lot zoned for single family uses. The buffers shall be owned by or be under the control of a homeowner's association or be owned outright or under an easement by a third party or the property rights shall be otherwise divided so that the property owner does not directly own the right to remove, modify or damage the buffer." Cary, N.C., Unified Development Ordinance § 14.1.5(o) (1995). This requirement was not in effect at the time conditional use permit Z-664-92-PUD was approved.

2. Of the eighteen lots that do not contain a portion of the buffer, eight are equal in size or smaller than the Evanses' lot discounting the buffer, and sixteen are equal in size or smaller than the Naiks' lot discounting the buffer.

WESTMINSTER HOMES, INC. v. TOWN OF CARY ZONING BD. OF ADJUST.

[354 N.C. 298 (2001)]

interpretation of the conditional use permit and the determination that petitioners were in violation of the permit.

Petitioners appealed to Superior Court, Wake County. At this point, the Thornes formally intervened. After a hearing, the court overturned the Board's ruling and ordered that the Sherborne home-owners were permitted to install gates in the fence in order to access that portion of their property located beyond the fence in the buffer area. Intervenor/respondents appealed. The Court of Appeals reversed the trial court, holding that petitioners are prohibited from installing gates in the fence. *Westminster Homes*, 140 N.C. App. at 106, 535 S.E.2d at 419.

The only issue before this Court is whether petitioners, as residents of the Sherborne subdivision, may install individual access gates in the fence required under the conditional use zoning permit. Petitioners contend that the Board and the Court of Appeals erred in holding that such gates are prohibited under a proper construction of the conditional use zoning permit. We disagree.

"[C]onditional use zoning occurs when a governmental body, without committing its own authority, secures a given property owner's agreement to limit the use of his property to a particular use or to subject his tract to certain restrictions as a precondition to any rezoning." *Chrismon v. Guilford County*, 322 N.C. 611, 618, 370 S.E.2d 579, 583 (1988). "[T]he practice of conditional use zoning is an approved practice in North Carolina, so long as the action of the local zoning authority in accomplishing the zoning is reasonable, neither arbitrary nor unduly discriminatory, and in the public interest." *Id.* at 617, 370 S.E.2d at 583; *see also* N.C.G.S. §§ 160A-381, 160A-382 (1999). "[T]he only use which can be made of the land which is conditionally rezoned is that which is specified in the conditional use permit." *Hall v. City of Durham*, 323 N.C. 293, 300, 372 S.E.2d 564, 569 (1988).

Thus, a conditional use zoning permit is a specialized form of a municipal ordinance, and it follows that the same rules of construction apply to both. Courts apply the same rules of construction when construing both statutes and municipal zoning ordinances. *Cogdell v. Taylor*, 264 N.C. 424, 428, 142 S.E.2d 36, 39 (1965) ("The rules applicable to the construction of statutes are equally applicable to the construction of municipal ordinances."); *accord Coastal Ready-Mix Concrete Co. v. Board of Comm'rs of Town of Nags Head*, 299 N.C. 620, 629, 265 S.E.2d 379, 385 (1980); *George v. Town of Edenton*, 294 N.C. 679, 684, 242 S.E.2d 877, 880 (1978). "The basic rule is to ascer-

304 IN THE SUPREME COURT

WESTMINSTER HOMES, INC. v. TOWN OF CARY ZONING BD. OF ADJUST.

[354 N.C. 298 (2001)]

tain and effectuate the intention of the municipal legislative body." *George*, 294 N.C. at 684, 242 S.E.2d at 880.

> Intent is determined according to the same general rules governing statutory construction, that is, by examining (i) language, (ii) spirit, and (iii) goal of the ordinance. [*Coastal Ready-Mix Concrete Co.*, 299 N.C. at 629, 265 S.E.2d at 385.] Since zoning ordinances are in derogation of common-law property rights, limitations and restrictions not clearly within the scope of the language employed in such ordinances should be excluded from the operation thereof. *Yancey v. Heafner*, 268 N.C. 263, 266, 150 S.E.2d 440, 443 (1966).

*Capricorn Equity Corp. v. Town of Chapel Hill Bd. of Adjust.*, 334 N.C. 132, 138-39, 431 S.E.2d 183, 188 (1993).

We also are mindful of several other principles of general statutory construction as we examine the issue before us. First, "[i]t is a well established principle of statutory construction that a section of a statute dealing with a specific situation controls, with respect to that situation, other sections which are general in their application." *State ex rel. Utils. Comm'n v. Lumbee River Elec. Membership Corp.*, 275 N.C. 250, 260, 166 S.E.2d 663, 670 (1969); *accord Three Guys Real Estate v. Harnett County*, 345 N.C. 468, 474, 480 S.E.2d 681, 684 (1997); *Trustees of Rowan Technical Coll. v. J. Hyatt Hammond Assocs.*, 313 N.C. 230, 238, 328 S.E.2d 274, 279 (1985). Second, if the words of a statute are plain and unambiguous, the court need look no further. *Walker v. Board of Trustees of N.C. Local Governmental Employees' Ret. Sys.*, 348 N.C. 63, 65-66, 499 S.E.2d 429, 430-31 (1998); *In re Banks*, 295 N.C. 236, 239, 244 S.E.2d 386, 388-89 (1978). Finally, if the language is unclear, judicial construction may be required. *Banks*, 295 N.C. at 239, 244 S.E.2d at 388-89.

Petitioners present a number of arguments to support their position that individual access gates should be allowed in the fence required under the conditional use permit. Petitioners first argue that the Board and the Court of Appeals erred by failing to interpret the term "fence" consistently throughout the permit and with the Town of Cary Unified Development Ordinance. They contend that terms should be interpreted consistently throughout all zoning authorities and that the ordinance should provide a context for the conditional use permit, which would favor allowing individual access gates in all fences. Under the circumstances of this case, we do not agree.

.

WESTMINSTER HOMES, INC. v. TOWN OF CARY ZONING BD. OF ADJUST.

[354 N.C. 298 (2001)]

The term "fence" is defined in the Cary Unified Development Ordinance as "[a] structure used to delineate a boundary or as *a barrier or means of protection, confinement, or screening.*" Cary, N.C., Unified Development Ordinance § 2.1.4 (1992) (emphasis added). The term "fence" is not expressly defined in permit Z-664-92-PUD. Neither the ordinance nor the permit defines the term "gate." The ordinance does contain, however, language which is instructive in this case. The ordinance states, under the heading "General Rules of Construction," that "[i]n the event of any conflict between the limitations, requirements, or standards contained in different provisions of this Ordinance and applying to an individual use or structure, the more restrictive provision shall apply." Unified Development Ordinance § 2.1.1(b).

We are unable to discover any provision in the Cary Unified Development Ordinance requiring terms to be defined in the exact same manner in both the ordinance and conditional use permits. Moreover, the more specific terms of the conditional use permit, by design, are meant to place additional restrictions on land use and control when applicable. *Id.; see also Chrismon,* 322 N.C. at 618, 370 S.E.2d at 583-84. Thus, the permit may provide for a fence without gates, even if the ordinance was clear that gates are usually part of a fence. Such is not the case here, as "gates" are not mentioned in the ordinance. The conditional use permit, relating to specific uses and conditions, does not necessarily have to be interpreted consistently with the more general ordinance.

Even if we assume, *arguendo,* that terms must be defined in the same manner throughout all zoning authorities, the ordinance is not specific in this case and thus does not control our understanding of the term "fence." The term "fence" as defined in the ordinance does not specifically provide for gates, and the term "gate" is not defined in either the ordinance or the permit itself.

Petitioners claim that, under this interpretation, there are possible challenges to countless conditional use rezoning permits. We do not agree. Our interpretation of the conditional use permit *as specifically applied* here and in relation to the ordinance in this regard will not apply more broadly to produce uncertainty and inconsistencies at the local level. Definitions found in conditional use zoning permits can be different from those found for the same terms in general ordinances because conditional use permits are necessarily more specific in application and restriction than general provisions. Conditional

WESTMINSTER HOMES, INC. v. TOWN OF CARY ZONING BD. OF ADJUST.

[354 N.C. 298 (2001)]

use permit "inconsistencies" with more general ordinances are normally contemplated as an acceptable means to require more restrictive uses in a given specific area or location.

Petitioners further contend that, based on the plain language of the conditional use permit, gates are permitted in the fence at issue. They believe that nothing in the conditional use permit suggests that this fence was intended to block an owner's access to his property. As evidence in support of their interpretation, petitioners point to the fact that the Town approved the subdivision and sale of the buffer to homeowners. They contend that it is illogical to suggest that the Town intended to block access to this portion of their land. They argue that with a gate already allowed for the sewer easement, it is inconsistent to say that the continuity and integrity of the fence would be damaged by other gates. However, we believe a close reading of the entire permit suggests that its clear intention was to preclude all gates not expressly provided for in the document.

Thus, we do not agree with petitioners' understanding of the plain language of the permit. Only one gate is expressly mentioned in the permit. This gate was placed in the fence to allow access to an easement for maintenance of the sewer by the Town. The permit does not suggest a reason for any other gates in the fence. Westminster could have easily specified or bargained for additional individual access gates if it had originally so desired. It did not do so.

In addition, all other requirements in the permit support our interpretation that additional gates are not permitted. The permit states that the fence is to be the "same architecturally" as two existing fences, neither of which has a gate. The fence, together with "[f]ast growing and evergreen trees," is to provide "both optical and acoustical screening" between the neighbors. The fence also is connected to other existing fences "in order to preserve continuity and integrity." The language that "[t]he buffer otherwise will remain in its present natural and undisturbed condition, except fencing and plantings," likewise does not suggest the permission of residential access and use; rather, it implies the opposite. It is true that in 1993 the Town did approve Westminster's preliminary plan for Sherborne, which included the subdivision of the buffer area by extension of lateral boundary lines of lots to be sold into the buffer to the adjacent boundary with Harmony Hill. This fact, however, is not a persuasive indication of the intended extent of the permit to include individual access gates. When examined in context, the language of the condi-

WESTMINSTER HOMES, INC. v. TOWN OF CARY ZONING BD. OF ADJUST.

[354 N.C. 298 (2001)]

tional use permit itself describes a desire for complete separation and privacy for the Harmony Hill neighborhood. Taken together, these requirements do not lead to or support petitioners' conclusion. The careful use of terms and language in the permit conveys a clear desire for privacy through a wide, comprehensive buffer which includes an architecturally compatible fence restricting residential access and use.

Several other facts support our interpretation of the zoning requirements. The drawing of the fence which accompanied the plans submitted to the Town for the Sherborne subdivision did not include gates or an illustration of a gate. The permit also required the fence to be set forty-five feet off the property line and the buffer itself to be left in an "undisturbed" state. The requirement of an "undisturbed" buffer strongly suggests that gates are not permitted. Easy access through such gates may ultimately lead to a change in the fundamental nature of the buffer area. For example, it is undisputed that the five feet of buffer zone on the inside, or petitioners' side, of the fence has not remained in the intended natural state and has gradually become part of petitioners' lawns. Allowing additional gates may, however unintentionally, lead to a gradual degradation of the environment specified in the permit. Taken together, these requirements appear entirely contrary to a desire to provide easy access for Sherborne residents. They do suggest, however, that additional gates are not to be installed in the fence and, perhaps, that the buffer was originally inadvertently subdivided as indicated above.

We also note that the fence, as originally built, contained only the one gate for the sewer easement. This fact is a strong indication of the intent and understanding of the nature of both the fence and the buffer area on the part of the Town and Westminster. *See Preyer v. Parker*, 257 N.C. 440, 446, 125 S.E.2d 916, 920 (1962) (stating that the conduct of the parties indicating the manner in which they themselves construe the agreement will be given weight in the interpretation of the instrument by the courts). It is quite unusual to build a fence with no gates if such gates were originally contemplated, so that one would have to return and, wastefully, tear the fence apart to later install gates. Even after Westminster had subdivided the lots, it did not include gates for the anticipated homeowners until asked by the individual petitioners. These facts, taken together with the plain language of the permit, are a strong indication that the parties themselves originally understood the permit to exclude individual access gates in the fence.

WESTMINSTER HOMES, INC. v. TOWN OF CARY ZONING BD. OF ADJUST.

[354 N.C. 298 (2001)]

Petitioners further assert that a non-access interpretation will lead to absurd or illogical results. They argue that they will own inaccessible property for which they maintain tax and tort liability. However, without access petitioners will hardly be inviting or allowing other people to make use of the buffer area, and only trespassers would likely gain access to this undisturbed area. We thus conclude that under the circumstances here, there would be no reasonable basis for tort liability absent some willful action. *See Nelson v. Freeland*, 349 N.C. 615, 632, 507 S.E.2d 882, 892 (1998). With regard to tax liability, the lack of access could potentially reduce petitioners' tax liabilities, in that the residential area of their lots is reduced in value.

Next, petitioners contend that the proper interpretation of the conditional use permit, and zoning ordinances in general, should favor the free use of property. *See Yancey*, 268 N.C. at 266, 150 S.E.2d at 443. Petitioners thus assert that zoning ordinances should be strictly construed in favor of the landowner and that courts should not presume intent to impose property restrictions beyond those clearly set forth in the permit. While ambiguous zoning statutes should be interpreted to permit the free use of land, as discussed above, no such ambiguity exists here. Even though the buffer and the fence restrict the use of part of these lots, this limitation is permitted under the circumstances. The permit is clear in its restrictions as to use of the buffer area. It is to be "undisturbed."

The permit is a result of a compromise bargain, an agreement for higher density development by Westminster in exchange for additional privacy protection for Harmony Hill. Westminster could not have subdivided the property for the Sherborne subdivision without this bargain, which removed respondents' protests to Westminster's proposed rezoning. As the property has now been subdivided and developed, Harmony Hill residents would be left with substantially less than the privacy for which they bargained if gates were permitted under the permit, after giving the full benefit of greater development to Westminster and petitioners.

Furthermore, clear notice of the buffer area and fence was given in petitioners' deeds and the recorded plat. Westminster's sale of the buffer area, not the Board's interpretation of the ordinance, resulted in the contended claim which petitioners now assert. Under the circumstances, the expressed intentions of the permit for an extensive, composite privacy buffer must control. Like the Board, we interpret the zoning ordinance as not permitting additional gates in the fence,

WESTMINSTER HOMES, INC. v. TOWN OF CARY ZONING BD. OF ADJUST.

[354 N.C. 298 (2001)]

even if it restricts the use of land in the Sherborne subdivision in this case.

Petitioners finally assert that if gates are not permitted, this amounts to an unconstitutional taking of their land by the Board. Petitioners raise this issue for the first time on appeal to this Court. This Court has long held that issues and theories of a case not raised below will not be considered on appeal, *see, e.g., Smith v. Bonney,* 215 N.C. 183, 184-85, 1 S.E.2d 371, 371-72 (1939); *Weil v. Herring,* 207 N.C. 6, 10, 175 S.E. 836, 838 (1934), and this issue is not properly before this Court. In any event, we do not consider the Board's interpretation of this permit to be an unconstitutional "taking" of petitioners' private property since there was no imposition of new conditions on petitioners' use in this case, in that the Board merely applied already-existing conditions. Further, this permit was not imposed by a legislative or regulatory body, but was requested and negotiated by the parties. Here, Westminster voluntarily assumed these restrictions as a compromise that allowed it to request a higher density residential zoning. " '[O]ne who voluntarily proceeds under a statute and claims benefits thereby conferred will not be heard to question its constitutionality in order to avoid its burdens.' " *Bailey v. State,* 348 N.C. 130, 147, 500 S.E.2d 54, 64 (1998) (quoting *Convent of Sisters of St. Joseph v. City of Winston-Salem,* 243 N.C. 316, 324, 90 S.E.2d 879, 885 (1956)).

We conclude that the additional, individual access gates sought by petitioners are not permitted under conditional use zoning permit Z-664-92-PUD. The Board has interpreted the existing conditions of the permit consistently over time,[3] and we hold that its interpretation is reasonable in light of all the circumstances of this case. From the language of the permit, as well as the surrounding facts and circumstances, it is clear that gates, other than the one specified for the sewer easement, are not permitted in the fence. In this case, we are compelled to agree with intervenor/respondents that "[g]ood fences make good neighbors." Robert Frost, *Mending Wall, in* The Poetry of Robert Frost 33, 33-34 (Edward Connery Lathem ed., Holt, Rinehart and Winston 1969) (1914). Thus, for the reasons discussed above, the decision of the Court of Appeals is

---

3. In May 1997, a gate was added to the fence between the Harmony Hills neighborhood and the Providence Commons subdivision. The Town determined that, under the Z-664-92-PUD conditions, additional gates were not permitted. Providence Commons residents did not appeal this determination. Instead, an application to amend the zoning conditions was submitted to the Cary Town Council. The application was later withdrawn.

WESTMINSTER HOMES, INC. v. TOWN OF CARY ZONING BD. OF ADJUST.

[354 N.C. 298 (2001)]

AFFIRMED.

Justice ORR dissenting.

The bottom line of the majority opinion is, in effect, to totally deprive a property owner of access to a portion of that owner's land despite the fact that the owner continues to pay taxes on and be liable for that property. In order to reach this result, the majority concludes that a clearly ambiguous ordinance is not ambiguous and that it is permissible for a term to have different meanings and application within the same ordinance without the ordinance ever specifying that such is the case. I conclude for the reasons set forth below that the Cary ordinance in question does not prohibit the petitioners from putting a gate in the fence. Furthermore, even though the constitutionality of this action by the Town of Cary was not raised below, I disagree with the majority that it is "not an unconstitutional taking." I therefore respectfully dissent from this unwarranted disregard for private property rights.

The majority holds that the term "fence" in the conditional use ordinance has a meaning different from the meaning in the Cary ordinance and in the language of Z-664-92-PUD itself. However, such reasoning is contrary to an established canon of statutory interpretation, which also applies to the interpretation of municipal ordinances. *See Woodhouse v. Board of Comm'rs of Nags Head,* 299 N.C. 211, 225, 261 S.E.2d 882, 891 (1980). The rules of statutory interpretation require statutes to be "construed as a whole, and not by the wording of any particular section or part." *McLeod v. Board of Comm'rs of Carthage,* 148 N.C. 77, 85, 61 S.E. 605, 607 (1908). Thus, words that carry a specific definition in one part of a statute are presumed to carry that same definition in all other parts. As the intervenor concedes, the conditional use permit is part of the Cary ordinance. Therefore, unless the language expressly states otherwise, we must presume that the application of the definition of "fence" in the conditional use ordinance is consistent with its definition in the Cary ordinance. If you can have a gate in your fence under the Cary ordinance in other situations, then you can have one under these facts unless something to the contrary specifically states otherwise.

Following this canon of statutory interpretation, the term "fence" in the ordinance must include gates. The term "fence" as used throughout the Cary ordinance indicates the Town's intent to allow gates. For example, the ordinance requires solid fences around play areas at day-care homes. Cary, N.C., Unified Development Ordinance

§§ 13.1.7, 13.1.8 (1992). These sections do not mention gates. However, gates must be included in the term "fence"; otherwise, children would have to be dropped over the fence in order to access the playground.

Language included in the Cary ordinance after Z-664-92-PUD was passed also provides insight on the definition of fence. The ordinance now provides that "[n]o sign or logo shall be permitted to be located on a fence." Cary, N.C., Unified Development Ordinance § 13.1.10(d) (1992). This language does not specifically prohibit signs and logos on gates, but the drafters clearly intended to do so. Any other interpretation would result in allowing signs and logos on gates but not on fences. The language of these two sections indicates that the term fence in the Cary ordinance includes gates installed within a fence. Because we must construe statutes as a whole and because the conditional use permit is part of the Cary ordinance, we must assume that the term "fence" as used in Z-664-92-PUD is defined consistent with that term's usage throughout the general zoning ordinance.

Aside from this established canon of statutory interpretation, the language of the conditional use ordinance itself indicates Cary's specific intent to define terms in the conditional use ordinance consistently with the zoning ordinance. The conditional use ordinance refers to at least one definition in the Cary ordinance, providing that trees in the undisturbed buffer area should be of the "type 'A' buffer standard." Reference to a "type 'A' buffer standard" is hopelessly unclear unless it was meant to carry the same meaning as those terms in the town ordinance. Thus, since Cary meant to use that term consistently, it follows that, absent language to the contrary, Cary intended to use "fence" consistently as well.

The assumption that terms carry the same meaning in the Cary ordinance and the conditional use ordinance can, however, be overcome by a clear indication that the terms were meant to have different meanings. That simply was not done in this case. The intervenors argue that the language of Z-664-92-PUD clearly indicates an intent to use a definition of fence that does not include gates. I disagree. The intervenors contend that because the land is an "undisturbed buffer," it should not be accessible. However, the text of Z-664-92-PUD indicates that the Town anticipated access to the buffer zone. Z-664-92-PUD requires the fence to be maintained and trees to be planted and replaced if necessary. Planting trees and maintaining a fence require people to walk in the buffer zone, thus showing that the Town anticipated some access to the buffer zone.

WESTMINSTER HOMES, INC. v. TOWN OF CARY ZONING BD. OF ADJUST.

[354 N.C. 298 (2001)]

Furthermore, after Z-664-92-PUD was passed, Cary defined "undisturbed buffer" as a "unit of land containing sufficient quality and quantity of vegetation to meet the requirements of Chapter 14, Part 1 of this Ordinance. Such buffer shall not be graded, nor shall any development occur within such buffer." Cary, N.C., Unified Development Ordinance § 2.1.4 (1992). Therefore, "undisturbed buffer" means that the land may not be graded, or developed, but it does not mean that access to the land is prohibited.

The intervenors contend that the conditional use ordinance requires the fence to preserve "continuity" and that a fence with gates is not continuous. However, "continuity" refers to the requirement that the fence connect at each end to already existing fences. They also argue that the fence must be the "same architecturally" as the Preston Woods fence and that because the Preston Woods fence has no gates, neither may the petitioners' fence. However, the installation of gates does not prevent a fence from being the same architecturally. In fact, the gates at issue in this case are made of the same materials, are the same size, and are thus identical architecturally to the rest of the fence.

The intervenors further contend that since Z-664-92-PUD specifies one gate, additional gates are excluded. They argue the canon of *expressio unius est exclusio alterius*—"to express or include one thing implies the exclusion of the other," Black's Law Dictionary 602 (7th ed. 1999)—but this canon applies only when the thing mentioned and the thing excluded are sufficiently similar to warrant the inference. The gate mentioned in the ordinance is for city sewer access and was required, while the gates at issue here are for private use and are optional. The gates at issue in this case differ too much from the sewer gates to apply the canon of *expressio unius est exclusio alterius*. Instead of prohibiting other gates, I believe specifying one gate indicates that gates are permissible. Had the Town intended to prohibit other gates, it could have easily done so by providing the appropriate language.

Finally, this Court has held that " '[z]oning regulations are in derogation of common law rights and they cannot be construed to include or exclude by implication that which is not clearly their express terms.' " *Yancey v. Heafner*, 268 N.C. 263, 266, 150 S.E.2d 440, 443 (1966) (quoting 1 E.C. Yokley, *Zoning Law and Practice* § 184 (2d. ed. Supp. 1962)). Because Z-664-92-PUD does not expressly prohibit gates, we cannot imply such a restriction, nor can we guess at what was intended.

While the majority quotes Robert Frost that "[g]ood fences make good neighbors," I fail to see how a solid, seven-foot tall, wooden fence with no gates or other means of access to the owner's property on the other side (short of pole-vaulting over the fence) is very neighborly. Perhaps the property owners from Sherborne subdivision can drive around to Harmony Hill subdivision, stop in front of their neighbors' homes and gaze longingly at the fifty-foot strip of their property to which they have no access. Maybe even on a good day, they will be invited to walk across their neighbor's backyard to actually stand on the property they own. Under the majority's view, that is their only hope.

Justice Butterfield joins in this dissenting opinion.