IN THE SUPREME COURT OF NORTH CAROLINA

No. 229A23

Filed 23 August 2024

ALISON ARTER

v.

ORANGE COUNTY, STEPHEN M. BURT, SHARON C. BURT, JODI BAKST, and REAL ESTATE EXPERTS

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 290 N.C. App. 128 (2023), affirming an order entered on 23 June 2022 by Judge R. Allen Baddour, Jr. in Superior Court, Orange County. Heard in the Supreme Court on 10 April 2024.

*Petesch Law, by Andrew J. Petesch, for petitioner-appellant.*

*James Bryan and Joseph Herrin for respondent-appellee Orange County.*

*The Brough Law Firm, PLLC, by Robert E. Hornik, Jr., for respondent-appellees Stephen M. Burt, Sharon C. Burt, Jodi Bakst, and Real Estate Experts.*

DIETZ, Justice.

Local governments have a responsibility to enact clear, unambiguous zoning rules. The increasing complexity of many local zoning ordinances can make that a difficult task. Zoning ordinances often contain pages upon pages of indices, headings, text, tables, and illustrative figures, all cross-referencing each other. Ensuring that this thicket of rules is free from ambiguity and internal inconsistency is a daunting task.

Orange County sought to address this dilemma through an interpretive rule in its zoning ordinances. An introductory provision in those ordinances states that the many headings, tables, figures, and illustrations contained within are merely "provided for convenience and reference" and if there is "any difference of meaning or implication between the text of this Ordinance and any heading, drawing, table, figure, or illustration, the text controls."

This case concerns a conflict between the text and a corresponding table in Orange County's zoning ordinances. As explained in more detail below, we agree with the Court of Appeals majority, which held that the interpretive instruction quoted above resolves the conflict, leaving no ambiguity in meaning. We therefore affirm the decision of the Court of Appeals.

**Facts and Procedural History**

In the mid-2000s, Alison Arter purchased land from Stephen and Sharon Burt in Orange County. The property had a home and a horse farm. Arter continued to operate the horse farm after buying the property. The Burts continued to own an adjacent property.

In 2020, a real estate developer applied to subdivide the Burts' property and construct a number of homes. At the time, both Arter's property and the Burts' property were zoned "R-1" residential under Orange County's zoning ordinances. Because of topography and water features on the Burts' property, the developer planned to build the main road leading to the new subdivision along the Burts' side

of the property line separating that property from Arter's property.

Upon learning of the plans for the subdivision and, in particular, the road next to her property line, Arter raised concerns that the road would disrupt activities on her horse farm. Arter submitted letters to Orange County asserting that the developer had an obligation, based on the applicable zoning ordinances, to build a thirty-foot buffer between the subdivision's road and her property.

The Orange County Planning & Inspections Department rejected Arter's arguments, determining that the county's zoning ordinances did not "require the establishment of a land use buffer when parcels have the same/similar general use zoning designations."

Arter appealed to the Orange County Board of Adjustment, which entered a written order upholding the department's decision. Arter then sought judicial review in Superior Court. After a hearing, the court affirmed. Arter then appealed to the Court of Appeals.

The Court of Appeals issued a divided decision. The majority held that the county's zoning ordinances only required buffers between different zoning districts and, because both properties were in the same R-1 zoning district, no buffers were required. *Arter v. Orange County*, 290 N.C. App. 128, 131 (2023). The majority therefore affirmed the lower court decision.

The dissent argued that, when also considering a table accompanying the text that offered contradictory guidance, buffers are required "based on the zoning

districts *or* land uses of the subject and adjacent properties." *Id*. at 136 (Carpenter, J., dissenting). Thus, the dissent argued, the case should be remanded for further fact-finding concerning the land use of the properties. *Id*.

Arter then filed a notice of appeal with this Court based on the dissent.

**Analysis**

In this type of zoning appeal, the trial court sits as an appellate court and applies "de novo review to alleged errors of law, including challenges to a board of adjustment's interpretation of a term in a municipal ordinance." *Morris Commc'ns Corp. v. City of Bessemer City Zoning Bd. of Adjustment*, 365 N.C. 152, 155 (2011). On further appellate review, both the Court of Appeals and this Court likewise apply de novo review to legal questions concerning the proper interpretation of a disputed provision in a zoning ordinance. *Id*.

Courts interpret zoning ordinances largely in the same manner as statutes and other written laws. *Westminster Homes, Inc. v. Town of Cary Zoning Bd. of Adjustment*, 354 N.C. 298, 303 (2001). We begin with the text of the statute and, if that text is clear and unambiguous, we "conclude that the legislature intended the statute to be implemented according to the plain meaning of its terms." *Lanvale Props., LLC v. County of Cabarrus*, 366 N.C. 142, 154 (2012).

When a zoning ordinance's language is ambiguous, we resort to other accepted tools of statutory construction to "ascertain and effectuate the intent of the legislative body." *Coastal Ready-Mix Concrete Co. v. Bd. of Comm'rs*, 299 N.C. 620, 629 (1980).

The only difference between traditional statutory interpretation and the interpretation of zoning laws is a special rule of construction: because zoning laws "are in derogation of common law rights," they "cannot be construed to include or exclude by implication that which is not clearly their express terms." *Yancey v. Heafner*, 268 N.C. 263, 266 (1966). Moreover, when there are "well-founded doubts" about the proper meaning of a zoning law—that is to say, an ambiguity—courts must choose the reasonable interpretation that favors "the free use of property." *Id.*

With these principles in mind, we turn to the disputed portions of Orange County's zoning ordinances. The crux of this case is a conflict between the text of the applicable ordinance and the contents of a corresponding table that purports to complement that text.

Section 6.8.6 of Orange County's zoning ordinances is titled "Land Use Buffers." Subsection (A) contains a purpose statement indicating the buffers are intended to screen certain land uses from other "incompatible" uses. Subsection (B) contains the operative text stating that buffers are required based on the respective zoning districts of the properties:

**6.8.6 Land Use Buffers**

**(A) Purpose**

Land use buffers are intended to screen and buffer lower intensity/density uses from incompatible higher intensity/density land uses. Buffers reduce adverse visual effects, as well as noise, dust, and odor.

**(B) Applicability**

Land use buffers will be required based on the zoning district of the proposed use and the zoning district of the adjacent uses.

Orange County Unified Development Ordinance (UDO) art. 6, § 6.8.6.

Following another subsection discussing the location of required buffers, the ordinance then contains subsection (D) which is titled "Land Use Buffer Table" and includes the following table:

| | | RB, AR, RI | R-2, R-3 | R-4, R-5 | R-8, R-13 | HP-CD | O/RM, NC-2, LC-1 | CC-3,GC-4, EC-5 | EI, I-1, I-2, I-3, PID | INTERSTATE HIGHWAY | ARTERIAL STREET | COLLECTOR STREET | ACTIVE FARM/ AGRICULTURE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | RB, AR, R1 | - | A | A | B | F | E | F | F | F | E | B | B |
| | R-2 & R-3 | A | - | A | B | F | D | F | F | F | D | B | B |
| | R-4 & R-5 | A | A | - | B | F | C | E | E | F | C | B | B |
| | R-8 & R-13 | B | B | B | - | F | B | D | D | F | C | B | B |
| | HP-CD | F | F | F | F | - | F | F | F | F | F | F | F |
| | O/RM, NC-2, LC-1 | E | D | C | B | F | - | - | - | F | B | B | D |
| | CC-3, GC-4, EC-5 | F | F | E | D | F | - | - | - | F | B | B | D |
| | EI, I-1, I-2, I-3, PID | F | F | E | E | F | - | - | - | F | B | B | D |
| | AS, ASE-CD | D | A | A | A | F | A | A | A | F | B | B | B |

**TABLE 6.8.6.D: LAND USE BUFFERS** — **ZONING OR USE OF ADJACENT PROPERTIES** (column headers). Left axis: **Zoning or Use of Subject Property**.

Note: MPD-CD, R-CD, and NR-CD buffers to be determined at time of approval.

*Id.* § 6.8.6(D).

This table lists each of the zoning districts identified in other portions of the ordinances. *See id.* art. 3. The rows represent the zoning districts of the "subject property" and the columns represent the zoning districts of the "adjacent properties." The letters in the table correspond to the type of buffer required for each possible

combination of zoning districts. *Id*. § 6.8.6(F).

There are two noteworthy points about this Land Use Buffer Table in subsection (D). First, when comparing zoning districts to each other, the table is consistent with the operative text in subsection (B), which states that buffers are "required based on the zoning district of the proposed use and the zoning district of the adjacent uses." *Id*. § 6.8.6(B). The table identifies the type of buffer required for each possible combination of zoning districts. Additionally, whenever the table compares a zoning district to itself, the notation in the table is simply a dash, indicating that no buffer is required. *Id*. All of this is consistent with the text of subsection (B).

But there is a second, conflicting portion of the table. In addition to listing each possible zoning district in the columns, the table also includes four categories that are not zoning districts: Interstate Highway, Arterial Street, Collector Street, and Active Farm/Agriculture. *Id*. § 6.8.6(D). This sets up an internal conflict within the table. Suppose a property is zoned R-4 and the adjacent property is zoned R-2. The table indicates that this combination requires buffer type "A". But what if that adjacent R-2 property is an active farm? The table requires buffer type "B" between a property zoned R-4 and an active farm. Thus, in this example, the table is internally inconsistent, requiring both buffer types "A" and "B".

Moreover, there is a broader conflict between the table and the text in subsection (B). The text states that buffers are required based on the *zoning districts*

of the properties. *Id.* § 6.8.6(B). The additional categories in the table—highways, active farms, and so on—are not zoning districts. Thus, requiring a buffer based on these additional categories conflicts with the textual requirement of subsection (B).

Ordinarily, these types of internal inconsistencies would create ambiguity that courts must resolve through the interpretive rules described above. But a "fundamental rule of statutory construction is that when the legislature has erected within the statute itself a guide to its interpretation, that guide must be considered by the courts in the construction of other provisions of the act which, in themselves, are not clear and explicit." *Williams v. Williams*, 299 N.C. 174, 180 (1980).

Of course, these interpretive guides cannot override this Court's precedent governing how we interpret the law, because it is exclusively the judiciary's role "to say what the law is." *White v. Worth*, 126 N.C. 570, 583 (1900) (quoting *Marbury v. Madison*, 5 U.S. 137, 177 (1803)); *see also* N.C. Const. art. IV, § 12. But legislative bodies are free to define terms, provide grammatical rules, and take other steps to eliminate potential ambiguity in the text of written laws. *See Williams*, 299 N.C. at 179–80.

Here, Orange County's zoning ordinances contain this sort of permissible interpretive guide. Section 1.1.12 states that when there is a conflict between the text of an ordinance and a table, the text controls:

> Headings and illustrations contained herein are provided for convenience and reference only and do not define or limit the scope of any provision of this Ordinance. In case of any difference of meaning or implication between the

> text of this Ordinance and any heading, drawing, table, figure, or illustration, the text controls.

Orange County UDO art. 1, § 1.1.12 (2024).

This interpretive provision removes any potential conflict between the text and the table. As the provision plainly states, "the text controls." The text of the ordinance provides that buffers are "based on the zoning district of the proposed use and the zoning district of the adjacent uses." *Id.* § 6.8.6(B). Thus, in discerning the meaning of these ordinances, we ignore the four columns of the table that are not zoning districts. A landowner's obligation to install a "land use buffer" under this ordinance is based solely on the zoning district of the landowner's property and the zoning district of the adjacent property.

Here, the parties do not dispute that the Burts' property and Arter's property are both zoned R-1. Consulting the corresponding portion of the Land Use Buffer Table that governs buffers between zoning districts, no buffer is required because the zoning districts are the same. *Id.* § 6.8.6(D).

Accordingly, the Court of Appeals majority properly held that the unambiguous language of the relevant zoning ordinances did not require any buffer between these two properties.

**Conclusion**

We affirm the decision of the Court of Appeals.

AFFIRMED.

Justice RIGGS did not participate in the consideration or decision of this case.