Przybyszewski, Appellant, *v.* Nunes.

Argued November 13, 1950. Before HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ. (RHODES, P. J., absent).

*John M. Wolford,* with him *Franklin B. Hosbach* and *Hosbach & Good,* for appellant.

*Frederick F. Jones,* with him *Gifford, Graham, Mac-Donald & Illig,* for appellee.

OPINION BY DITHRICH, J., January 12, 1951:

In this right-angle collision case plaintiff appeals from the entry of judgment n.o.v. for defendant. The sole question for determination is whether the court erred in holding plaintiff guilty of contributory negligence as a matter of law.

On the morning of November 25, 1947, plaintiff was driving his automobile west on West 12th Street in the City of Erie. Snow was falling but visibility was good. The street was slushy and somewhat slippery. Plaintiff's car was the tenth in a funeral procession of eleven cars. A funeral flag was attached to his left front fender. At the intersection of West 12th Street and Liberty Street, over the center of which a traffic light was suspended, a motorcycle patrolman accompanying the procession halted traffic on Liberty Street and then, after the hearse and two cars had passed through, went on to the next intersection. Plaintiff, driving at a speed of from 10 to 15 m.p.h., looked to his left when he was about two or two and a half car lengths away from the intersection. He observed three cars which had stopped on Liberty. As he approached the crosswalk he again looked to his left and saw defendant's car, the second in line, pull out from behind the car in front of it and start through the intersection. Plaintiff, thinking that defendant was going to stop, did not apply his brakes until too late to avoid the collision. Defendant had reached, according to plaintiff, a speed of 30 m.p.h.

The testimony of plaintiff and his witnesses as to the status of the traffic light was conflicting. The testimony of plaintiff himself was not consistent. He testified on direct examination that as he approached the intersection the light was amber, and that it changed

to red as he entered the intersection; that as defendant came from behind the car in front of him "the light changed from amber to red." On cross-examination he was asked, ". . . as you approached the intersection . . . the light changed from amber to red?" He answered, "That is correct." On redirect examination, however, he testified that he was entering the intersection "when the light changed from green to amber." One of his witnesses testified that the light was amber when plaintiff entered the intersection. According to two others, it was changing from amber to red.

Even when this conflict is resolved in plaintiff's favor, as it is required to be in view of the verdict, the most that can be said for him is that he had a qualified right to proceed. Section 1026 of The Vehicle Code of May 1, 1929, P. L. 905, as amended, 75 PS §635, provides in part as follows: "(b) Whenever traffic at an intersection is alternately directed to stop and go, by the use of traffic signals, the colored lights shall indicate as follows . . . 2. Yellow, When Shown Alone. —Traffic facing the signal shall stop before entering the nearest crosswalk at the intersection, but if such stop cannot be made in safety, a vehicle may be driven *cautiously* through the intersection." (Italics supplied.)

Plaintiff's own testimony discloses his failure to comply with this provision. On cross-examination he testified as follows: "Q. . . . you continued on through the intersection through the red light because you thought you had the right of way being in a funeral procession? A. Take it this way. If I didn't have the right of way at that intersection I would never have went through it. Q. You figured you had the right of way because you were in the funeral procession? A. That is the way I understood it. Q. It was because you were in the funeral procession and not because the light was green in your favor, isn't that true? A. Yes, I was in the funeral procession." On recross-examina-

tion he testified as follows: "Q. You saw him coming through there, didn't you? A. I seen him when he come out but I thought he was going to stop. Q. What gave you that impression? A. On account of the funeral flags on the cars, we thought he would see them . . . . Q. You saw that Mr. Nunes started out on the amber light? A. That is correct. Q. Isn't it true that the reason you went through the intersection was because you were in a funeral procession rather than because you had the green light? A. The reason I went through the intersection, I was in a funeral procession and my car was already in the intersection and I didn't think he was going through it."

If the light was yellow, plaintiff had the right of way, but only to proceed "cautiously." Cf. *Von Cannon v. Philadelphia Transportation Co.,* 148 Pa. Superior Ct. 330, 25 A. 2d 584. "A 'go' signal at a street intersection . . . is not a command to go but a qualified permission,—i.e., a permission to proceed lawfully and carefully in the direction indicated." *Galliano v. East Penn Electric Co.,* 303 Pa. 498, 502, 154 A. 805. Motorists "must be highly vigilant and exercise extreme care in avoiding accidents and not merely depend for a 'safe passage' exclusively on some theoretical 'right of way' which they may possess or think they possess. Abstract rights sometimes have to yield to concrete facts." *Weinberg v. Pavitt,* 304 Pa. 312, 322, 155 A. 867. " 'Everyone to whom a duty is due has a right to assume that it will be performed . . . . He may go on the assumption that all precautions required by statute or established rule or custom will be taken': 20 R. C. L., section 101, page 117. However, this assumption like many others must yield to the realities of the situation, and, if the car on the left, even though further away from the intersection than the car on the right, approaches the intersection at such a high rate of speed as to make a collision at the intersection

likely, should the driver on the right relying on his 'right of way' push on, it would be the manifest duty of the latter to yield his 'superior right' in the interest of the safety of both motorists and of the public." *Adams v. Gardiner,* 306 Pa. 576, 583, 160 A. 589.

Plaintiff looked to his left and saw defendant start into the intersection at a high rate of speed. A collision must have appeared reasonably likely, if not inevitable, unless plaintiff stopped his car and yielded his right of way. Nevertheless plaintiff continued on his course until it was too late to avoid the collision. "The purpose of looking is to bring home knowledge of traffic conditions in the intersection; but if a person looks and then proceeds, ignoring an obvious danger, he must naturally suffer the consequences. He cannot assume that another will perform his or her duty when the contrary is apparent. . . . the plaintiff tested a danger which, according to his own version of the accident, was obvious to him . . . . He did not proceed blindly into danger, but he did proceed knowingly into danger." *Haney v. Woolford,* 124 Pa. Superior Ct. 208, 210-212, 188 A. 405.

Plaintiff had no right to assume that defendant would stop when the contrary was so apparent. He was not excused from the exercise of ordinary care by having entered the intersection first. Nor did the fact that he was a part of a funeral procession confer upon him any such superior right as he thought it did. "Undoubtedly, funeral processions are entitled to, and are generally accorded, respect and consideration in allowing them to proceed in a continuous procession; but we have been unable to find any authority which holds that they have the right of way to proceed as a single unit. . . . the individual drivers of the several units of the funeral procession . . .[must exercise] ordinary care under the circumstances." *Davis v. Pittsburgh*

*Railways Co.,* 128 Pa. Superior Ct. 393, 397, 398, 194 A. 402.

Judgment affirmed.