## THEON LATTIMORE COGDELL v. JOSEPHINE TAYLOR.

(Filed 19 May, 1965.)

**1. Automobiles §§ 41g, 42g—**

Plaintiff's evidence tending to show that the traffic control light facing her was green when she entered the intersection and changed to amber as she proceeded therein, and that defendant's car approached from the left at a speed of 40 miles per hour and collided with plaintiff's car in the intersection, *is held* to take the issue of defendant's negligence to the jury and not to disclose contributory negligence as a matter of law on the part of plaintiff.

**2. Trial § 21—**

Discrepancies in plaintiff's evidence are for the jury to resolve and do not warrant nonsuit.

**3. Automobiles § 6;   Municipal Corporations § 28—**

A municipality has authority to enact an ordinance relating to automatic traffic control signals at intersections and to the right of way of funeral processions, G.S. 20-169, and when automatic traffic control signals are installed pursuant to an ordinance, the respective rights of motorists depend upon the provisions of the particular ordinance.

**4. Municipal Corporations § 24—**

Subject to the basic rule that a municipal ordinance must be construed to effectuate the intent of the municipal legislative body, an ordinance will be given a reasonable interpretation and, if possible, its provisions will be reconciled and harmonized with other legislative enactments.

**5. Automobiles § 17;   Municipal Corporations § 28—**

In construing the municipal ordinances in question dealing with automatic traffic control signals at intersections and the right of way of funeral processions, *it is held* the funeral procession ordinance applies to all intersections within the municipality, whether having automatic traffic control signals or not, and supersedes the rules based on traffic lights, so that if a motorist knows or should know that a funeral procession is proceeding through an intersection, the motorist should yield the right of way to vehicles in the funeral procession, notwithstanding that he is faced with a green traffic control light.

**6. Automobiles § 17—Fact that vehicles in procession have lights burning is not in itself conclusive that procession is funeral procession.**

Where a municipal ordinance gives vehicles in a funeral procession the right of way at intersections, an instruction that if a motorist saw or should have seen a procession of cars traveling through an intersection with their lights on and proceeding in close proximity one to the other, such motorist should have known that a funeral procession was properly passing through the intersection and should yield the right of way, must be held for error, since the fact that the vehicles had their lights burning is not conclusive, but is merely a circumstance for the jury to consider, together with other evidence relative thereto, as to whether the motorist knew or should have

known from the surrounding facts that the procession was a funeral procession.

APPEAL by defendant from *Hubbard, J.,* November 16, 1964 Session of LENOIR.

Plaintiff's action and defendant's cross action grow out of the collision of their automobiles on Sunday, December 30, 1962, at or about 2:00 p.m., within the intersection of Vernon Avenue (an east-west street, part of U. S. 70) and Heritage Street (a north-south street) in the business district of Kinston, N. C.

Plaintiff was operating her Oldsmobile in a westerly direction along Vernon. Defendant's Buick was being operated in a northerly direction along Heritage by defendant's 18-year-old son, Haywood Taylor, Jr., referred to hereafter as Taylor.

Heritage, at its intersection with Vernon, is 31 feet wide. The record is silent as to the width of Vernon. The Bohannon building, located on the southeast corner of Vernon and Heritage, is 11 feet from the southern curb of Vernon and 15 feet from the eastern curb of Heritage. Until arrival at said intersection, plaintiff's view of approaching northbound traffic on Heritage and Taylor's view of approaching westbound traffic on Vernon were obstructed by the Bohannon building.

An electric traffic control signal was suspended over the center of said intersection of Vernon and Heritage. It was stipulated this was "a standard type electrical light system showing colors, green, red and amber, and was the type requiring traffic to stop on red, go on green, and caution on amber, as the City Ordinances, as well as the State Statutes, provide."

Plaintiff pleaded Section 22-33 of the Kinston City Code. It was stipulated the pleaded ordinance reads as follows: "No vehicle shall be driven through a funeral procession except fire department vehicles, police patrols, and ambulances when the same are responding to calls."

The collision occurred "about under the stop light." Plaintiff was on her right side of Vernon. The right front of defendant's car struck the side of plaintiff's car near the left front door and fender. Taylor did not see plaintiff's car "until it was approximately in front of (him)."

There was conflicting evidence as to Taylor's speed as he approached and entered said intersection. Too, there was conflicting evidence as to whether plaintiff or Taylor had the green light as she (he) approached and entered said intersection.

Plaintiff offered evidence tending to show she was in a line of cars, traveling slowly, "maybe 10 or 15 miles per hour," not more "than a (car) length or two apart," in a funeral procession; that a station wagon, the hearse and fifteen or more cars passed through said intersection ahead of her; that there were cars behind her in said funeral

procession; and that the lights on all cars in the funeral procession were burning, which was "the usual procedure," including the lights on plaintiff's car, those on the car a car length or less ahead of plaintiff and those on the car a car length behind plaintiff.

Defendant offered evidence tending to show the lights on plaintiff's car were not burning; that neither Taylor nor his passenger saw any cars proceeding west on Vernon either ahead of or behind plaintiff; that, as they approached said intersection, all they saw was the green traffic signal ahead of them and stopped cars headed east on Vernon at or near the southwest corner of said intersection; and that they had no knowledge or notice of a funeral procession on Vernon.

It was stipulated that the actionable negligence, if any, of Taylor, is imputable to defendant.

Issues of negligence and contributory negligence, arising on the pleadings in plaintiff's action, were answered in favor of plaintiff; and the jury awarded damages for plaintiff's personal injuries ($2,500.00) and for the damage to her car ($500.00). While superfluous, the jury answered adversely to defendant the issues arising on the pleadings in her cross action.

Judgment for plaintiff, in accordance with the verdict, was entered. Upon appeal, all of defendant's assignments of error, except formal assignments, relate (1) to the denial of her motion for nonsuit, and (2) to designated portions of the court's instructions to the jury.

*Wallace & Langley for plaintiff appellee.*
*Whitaker, Jeffress & Morris for defendant appellant.*

BOBBITT, J. Plaintiff testified the light facing her was green when she entered the intersection and changed to amber as she proceeded therein to the point of collision; and that, when she first saw defendant's car, it was approximately 75 feet south of the intersection, approaching the intersection at a speed of 40 miles per hour. Without reference to whether plaintiff was in a funeral procession, the evidence was sufficient to require submission to the jury of issues as to Taylor's negligence and as to plaintiff's contributory negligence. It was for the jury to resolve discrepancies in plaintiff's testimony as to her precise position when she first saw defendant's car. Strong, N. C. Index, Trial § 21, p. 318. The court properly denied defendant's motion for judgment of nonsuit.

Defendant assigns as error the court's instructions bearing upon their relative rights if plaintiff was in a funeral procession and Taylor had the green light. While exception was also taken to other portions of the charge, the gist of the challenged instructions is contained in the

following excerpt: "The fact that Mrs. Cogdell was in a funeral procession, if you find that she was, does not relieve her of this duty to obey the red light facing her unless you find that Haywood Taylor, Jr., as he approached and entered the intersection knew or should have known that a funeral procession was in the intersection and passing along Vernon Avenue. In other words, a person, Mrs. Cogdell in this case, who is in a funeral procession with the lights on on her car and on the other cars in the procession burning, must obey a red traffic signal in her line of travel unless the driver, Taylor in this case, approaching on the intersecting highway or street knew, or in the exercise of due care should have known, that a funeral procession was using the intersection where the traffic light facing him was green."

These significant matters should be noted: (1) G.S. 20-158(c) applies only to the regulation of traffic by automatic signal lights at intersections "outside of the corporate limits of a municipality." (2) There is no general statute prescribing rules of the road in respect of funeral or other processions.

On December 30, 1962, when the collision occurred, G.S. 20-169 provided: "Local authorities, except as expressly authorized by § 20-141 and § 20-158, shall have no power or authority to alter any speed limitations declared in this article or to enact or enforce any rules or regulations contrary to the provisions of this article, except *that local authorities shall have power to provide by ordinances for the regulation of traffic by means of traffic or semaphores or other signalling devices on any portion of the highway where traffic is heavy or continuous* and may prohibit other than one-way traffic upon certain highways, *and may regulate the use of the highways by processions or assemblages* and except that local authorities shall have the power to regulate the speed of vehicles on highways in public parks, but signs shall be erected giving notices of such special limits and regulations." (Our italics.) (Note: G.S. 20-169 was amended by adding two provisos by S.L. 1963, c. 559.)

When automatic traffic control signals are installed pursuant to municipal ordinance authorized by G.S. 20-169, the respective rights of motorists depend upon the provisions of the particular ordinance authorizing such installation. *Cox v. Freight Lines,* 236 N.C. 72, 78, 72 S.E. 2d 25, and cases cited; *Currin v. Williams,* 248 N.C. 32, 34, 102 S.E. 2d 455; *Upchurch v. Funeral Home,* 263 N.C. 560, 140 S.E. 2d 17. G.S. 20-169 also provides that local authorities "may regulate the use of the highways by processions or assemblages . . ."

From the foregoing, these propositions appear: (1) The Kinston ordinance is not in conflict with a general statute; and (2) authority for the enactment of the Kinston ordinances relating (a) to automatic

traffic control signals and (b) to funeral processions rests on G.S. 20-169.

The rules applicable to the construction of statutes are equally applicable to the construction of municipal ordinances. *In re O'Neal,* 243 N.C. 714, 92 S.E. 2d 189; *Perrell v. Service Co.,* 248 N.C. 153, 102 S.E. 2d 785. These rules of construction, stated by Johnson, J., in *Cab Co. v. Charlotte,* 234 N.C. 572, 576, 68 S.E. 2d 433, and in cases cited therein, include the following: "And in respect to related statutes, ordinarily they should be construed, if possible by reasonable interpretation, so as to give full force and effect to each of them . . ., it being a cardinal rule of construction that where it is possible to do so, it is the duty of the courts to reconcile laws and adapt that construction of a statute which harmonizes it with other statutory provisions." See 37 Am. Jur., Municipal Corporations § 187; 62 C.J.S., Municipal Corporations § 442(j), p. 851. Even so, as stated by Sharp, J., in *Bryan v. Wilson,* 259 N.C. 107, 110, 130 S.E. 2d 68: "The basic rule for the construction of ordinances is to ascertain and effectuate the intention of the municipal legislative body."

In *Sloss-Sheffield Steel & Iron Co. v. Allred,* 25 So. 2d 179, the Supreme Court of Alabama, referring to ordinances of the City of Birmingham relating (a) to automatic traffic control signals and (b) to driving through a procession, said: "Such ordinances are *in pari materia,* must be construed together and if possible be interpreted so as to be in harmony with each other." It was held that the driver of the defendant's truck was entitled to rely on the green light if he had no knowledge or notice that the plaintiff's car was in a funeral procession. These excerpts from the opinion of Stakely, J., are pertinent: "If the car of plaintiff was in a funeral procession and this was reasonably apparent to the public, then it had the right to enter the intersection on the red light by virtue of Section 5920 of the City Code dealing with driving through a procession." Again: "So far as the defendant is concerned, the green light did not authorize the driver of its truck to enter the intersection and drive through the funeral procession if the driver either knew or from the surrounding facts and circumstances should have known that a funeral procession was passing through the intersection." In our view, the quoted excerpts constitute a correct statement of the rule applicable to the factual situation now before us. Of course, as Judge Hubbard instructed the jury, the mere fact that plaintiff's car was in a funeral procession would not relieve her of *the general duty* to operate her car with due care for the safety of others.

Defendant contends the Kinston ordinances should be reconciled by applying the funeral procession ordinance only to intersections "uncontrolled" by traffic lights. Ordinarily, when traffic lights are installed

at an intersection, the relative rights of motorists approaching on intersecting streets are determinable with reference thereto rather than by the provisions of G.S. 20-155. Absent such traffic lights, the relative rights of such motorists are determinable with reference to G.S. 20-155. The more reasonable view, in our opinion, is that the municipal legislative body intended that the funeral procession ordinance should supersede the ordinary rules applicable to right of way at intersections irrespective of whether such rules are based on traffic lights or on G.S. 20-155. Reasons underlying the funeral procession ordinance include the following: (1) The respect and consideration funeral processions should receive; and (2) the practical necessity of proceeding as a single unit to avoid delay, confusion and deviation of cars from the proper route.

Decisions cited by defendant are factually distinguishable.

In *Sklar v. Southcomb*, 72 A. 2d 11 (Md.), the decision was not based on the plaintiff's status as a member of a funeral procession. This excerpt from the opinion is self-explanatory: "At the time of the accident the Motor Vehicle law did not authorize funeral processions entering an intersection on a green light to continue through after the light has changed, although such a provision was enacted by chapter 598 of the Acts of 1949, Code, Article 66-½, section 141(f)."

In *Otto v. Whearty*, 27 N.E. 2d 190 (Ohio App.), a Cleveland ordinance which, under prescribed conditions, purported to give the right of way at street intersections to funeral processions was held invalid as in conflict with general statutory law relating to traffic lights at intersections.

In *Brown v. Vigeon*, 367 S.W. 2d 727 (Tex. Civ. App.), and in *Przybyszewski v. Nunes*, 77 A. 2d 703 (Pa. Super.), the opinions contain no reference to any ordinance or statute relating to funeral processions.

In *Merkling v. Ford Motor Co.*, 296 N.Y.S. 393 (App. Div.), and in *Vinci v. Charney*, 80 N.Y.S. 2d 521, it was held that municipal ordinances relating to processions did not apply to intersections regulated by traffic control signals as provided in the general "Vehicle and Traffic Law."

In *Sundene v. Koppenhoefer*, 98 N.E. 2d 538 (Ill. App.), no ordinance relating to processions, funeral or otherwise, was involved, and no street intersection involving traffic lights was involved.

Other cases cited in the Annotation, 85 A.L.R. 2d 692, have been examined. *Sloss-Sheffield Steel & Iron Co. v. Allred, supra,* appears to be the only case in which the construction of two municipal ordinances, one relating to automatic traffic control signals and the other relating to driving through a procession, was involved.

COGDELL v. TAYLOR.

Instructions of Judge Hubbard, substantially in accord with the quoted excerpts from *Sloss-Sheffield Steel & Iron Co. v. Allred, supra,* are approved.

The excerpt from the charge challenged by defendant's Exception #4 includes the following: "The Court charges you that it is the custom in this area for cars in funeral processions to drive with headlights on and the meeting or observation of a procession of cars in the daytime with the lights burning should convey to the driver meeting or seeing such procession information that he is probably meeting or observing a funeral procession, and thereupon he should govern his driving accordingly, and while in the City of Kinston he should not drive through such procession. In the instant case if Taylor, while driving down Heritage Street, saw or should have seen a procession of cars travelling down Vernon Avenue through the Heritage Street intersection with lights on and proceeding in close proximity one to the other as is the custom of funeral processions, then Taylor should have known that a funeral procession probably was using Vernon Avenue, and should have yielded the right of way to such procession, including Mrs. Cogdell if she was a part thereof, even though he was faced with a green light."

The Kinston ordinance does not define a funeral procession or specify any requirements for identifying the cars in such procession. Compare the Ohio statute considered in *Butcher v. Churchill,* 159 N.E. 2d 620, 85 A.L.R. 2d 689, which, in part, provided: "As used in this section 'funeral procession' means two or more vehicles accompanying a body of a deceased person in the daytime when each of such vehicles has its headlights lighted and is displaying a purple and white pennant attached to each vehicle in such a manner as to be clearly visible to traffic approaching from any direction."

The Kinston ordinance refers only to funeral processions, not to processions generally. There is no evidence there was a police escort. Nor is there evidence the cars carried any pennant or other indicia by which they could be identified as part of a funeral procession.

Plaintiff's evidence indicates: The station wagon and hearse were far ahead of plaintiff. Taylor could not see westbound cars as they approached the intersection on account of the Bohannon building. Hence, Taylor, approaching from the south, could see only such cars as were in the intersection and for an undetermined distance west of the intersection. The lights on cars proceeding in a westbound procession, if burning, were shining toward the motorists ahead of and behind such cars.

There is no specific allegation as to custom. Plaintiff did allege she "was traveling in a line of a funeral procession as a member of the

funeral party" and that "the vehicles in the procession each had their headlights burning to signify that it was a funeral procession." The only evidence bearing upon custom was plaintiff's statement that it was "the usual procedure" to have all lights burning.

As indicated, plaintiff's allegations and evidence relating to custom were meager. Assuming it was "the usual procedure" for cars in a funeral procession to proceed with lights burning, was this, according to the prevailing custom in Kinston, the only means by which cars proceeding in a line gave notice they were in a *funeral* procession? Was it also customary for a funeral procession in Kinston to have a police escort or to be identified by pennants or other indicia?

When considered in the light most favorable to plaintiff, her allegations and evidence are to the effect it was customary for cars to have their lights burning when proceeding in a funeral procession. However, the provisions of the Kinston ordinance relating to automatic traffic control signals are not superseded by custom. Allegations and evidence relating to custom are relevant only as they may bear upon whether Taylor knew or from the surrounding facts and circumstances should have known a funeral procession was passing westward through the intersection.

While the charge in many respects merits commendation, we are constrained to hold the court erred in advising the jury categorically as to the custom of cars proceeding in a funeral procession in Kinston, and instructing the jury positively "if Taylor, while driving down Heritage Street, saw or should have seen a procession of cars travelling down Vernon Avenue through the Heritage Street intersection with lights on and proceeding in close proximity one to the other as is the custom of funeral processions, then Taylor should have known that a funeral procession probably was using Vernon Avenue, and should have yielded the right of way to such procession, including Mrs. Cogdell if she was a part thereof, even though he was faced with a green light."

Assuming the sufficiency of the evidence to support a finding that Taylor saw or should have seen cars traveling in a procession within and west of said intersection, and that the lights on said cars were burning, it was for the jury to say, upon consideration of all the evidence, including evidence as to the prevailing custom in Kinston, whether Taylor knew, or from the surrounding facts and circumstances should have known, that a funeral procession was passing westward through the intersection.

In view of the reliance ordinarily placed by motorists upon automatic traffic control signals at street intersections, it seems appropriate to suggest that any ordinance or statute purporting to give priority to funeral processions at intersections otherwise controlled by automatic

traffic signals should require compliance with prescribed conditions with reference to identification of such procession as a funeral procession as a prerequisite to reliance upon such ordinance or statute. Compare *Butcher v. Churchill, supra.*

For the reasons indicated, defendant is entitled to a new trial.

New trial.