IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA18-188

Filed: 6 November 2018

Watauga County, No. 15 CVS 628

APPALACHIAN MATERIALS, LLC, Petitioner,

v.

WATAUGA COUNTY, A North Carolina County, Respondent,

And

TERRY COVELL, SHARON COVELL and BLUE RIDGE ENVIRONMENTAL
DEFENSE LEAGUE, INC., d/b/a HIGH COUNTRY WATCH, Intervenors.

Appeal by petitioner from order entered 8 September 2017 by Judge R. Gregory
Horne in Watauga County Superior Court. Heard in the Court of Appeals 22 August
2018.

*Moffatt & Moffatt, PLLC, by Tyler R. Moffatt, for petitioner-appellant.*

*Di Santi Watson Capua Wilson & Garrett, PLLC, by Chelsea Bell Garrett, for
respondent-appellee.*

DAVIS, Judge.

This case requires us to construe a single provision of a Watauga County land
use ordinance prohibiting the construction of an asphalt plant within 1,500 feet of an
"educational facility." Although this appeal arises in the zoning context, the
resolution of this issue provides this Court with an opportunity to reiterate

fundamental principles of statutory interpretation applicable to the construction of any law or ordinance.

Appalachian Materials, LLC, ("Appalachian") appeals from the trial court's order upholding the denial of its application for a High Impact Land Use ("HILU") permit. The trial court affirmed the denial of Appalachian's permit because the proposed asphalt plant site was located within 1,500 feet of the Margaret E. Gragg Education Center (the "Gragg Center"), a building that serves as the central administrative office for the Watauga County Schools. Because we conclude that the Gragg Center does not qualify as an "educational facility" based on the plain language of the ordinance's definition of that term, we reverse the trial court's order.

**Factual and Procedural Background**

In March 2003, Watauga County adopted an "Ordinance to Regulate High Impact Land Uses" (the "HILU ordinance") in all unincorporated areas of the county. The ordinance was adopted "for the purpose of promoting the health, safety and general welfare of the citizens of Watauga County" by regulating certain land uses that "by their very nature produce objectionable levels of noise, odors, vibrations, fumes, light, smoke, and other impacts upon the lands adjacent to them." One such regulated use concerned the location of asphalt plants. Pursuant to the HILU ordinance, an asphalt plant "shall not be within 1,500 feet of a public or private educational facility, a [North Carolina] licensed child care facility, a [North Carolina]

assisted living facility, or a [North Carolina] licensed nursing home." In addition, no applicant wishing to build an asphalt plant is permitted to proceed with construction without having first received a permit from the Watauga County Department of Planning and Inspections.

On 10 November 2013, Appalachian began leasing an 8.5 acre tract of land located along Rainbow Trail in Watauga County upon which it intended to construct and operate an asphalt plant. Appalachian subsequently hired Derek Goddard, the vice-president of Blue Ridge Environmental Consultants, to plan, design, and obtain any necessary permits for the proposed asphalt plant site.

On 9 September 2014, Goddard emailed Joseph Furman, the director of the Watauga County Planning and Inspections Department, to inquire whether Furman could provide him with a map displaying all of the buffers required by the HILU ordinance. The following day, Furman replied by sending Goddard via an email attachment a map (the "HILU map") containing the heading "High Impact Land Use Spacing." The HILU map purported to depict facilities in Watauga County subject to the ordinance's spacing requirements and displayed a 1,500-foot buffer zone around each such facility. The HILU map did not indicate that the site of Appalachian's proposed asphalt plant was within 1,500 feet of any facility implicated by the HILU ordinance. The Gragg Center was not indicated on the map as being subject to the ordinance's spacing requirements.

On 15 June 2015, Appalachian submitted a High Impact Land Use Development Permit Application to the Watauga County Planning and Inspections Department in which it sought approval to construct and operate an asphalt plant in the vicinity of Rainbow Trail. In his capacity as director of the Planning and Inspections Department, Furman denied Appalachian's permit application on 22 June 2015. Furman explained his reasoning for denying the application, in relevant part, as follows:

> According to Article II, Section 3(G) Spacing Requirements, the nearest portion of the premises of an asphalt plant may not be established within 1,500 feet of a public or private educational facility. The [Gragg Center] is clearly within 1,500 feet of the premises of this asphalt plant based upon our review of the application.

On 17 July 2015, Appalachian appealed Furman's decision to the Watauga County Board of Adjustment (the "Board") pursuant to N.C. Gen Stat. § 160A-388(b1). Sharon and Terry Covell, homeowners whose property was located next to the proposed asphalt plant, and the Blue Ridge Environmental Defense League, Inc. subsequently filed motions to intervene as parties to Appalachian's appeal. A hearing on the motions to intervene and on Appalachian's appeal was held before the Board beginning on 14 October 2015. The Board first heard evidence on the two motions to intervene and granted both motions. The Board then received evidence with regard to Appalachian's appeal of the denial of its permit application.

Scott Elliot, the superintendent of Watauga County Schools, testified at the hearing concerning the various functions of the Gragg Center. Elliot stated that the Gragg Center served as the central office for Watauga County Schools as well as the meeting place for the Watauga County Board of Education. He further testified that the building primarily housed administrative personnel responsible for coordinating and implementing the education curriculum for the entire Watauga County Schools system. In addition, Elliot stated that professional development training for teachers, student testing, and the Watauga County Spelling Bee also took place at the Gragg Center.

On 30 October 2015, the Board issued a decision upholding Furman's denial of Appalachian's permit application. In its decision, the Board made the following pertinent findings of fact:

> 2. The [Gragg Center] is located within 1500 feet from the nearest portion of the building, structure, or outdoor storage used as part of the premises for the proposed asphalt plant.
>
> 3. The [Gragg Center] meets the requirements for an Education Facility as defined in the High Impact Land Use Ordinance.

Appalachian sought review of the Board's decision in Watauga County Superior Court on 2 December 2015 by means of a petition for *certiorari*. Following a hearing on 14 August 2017, the Honorable R. Gregory Horne entered an order on 8

September 2017 affirming the Board's decision. Appalachian filed a timely notice of appeal to this Court.

## Analysis

Although Appalachian has raised several arguments, we need address only the question of whether the Gragg Center is an "educational facility" as that term is defined by the HILU ordinance because that issue is dispositive of this appeal. This Court has held that "[a] legislative body such as the Board [of Adjustment], when granting or denying a conditional use permit, sits as a quasi-judicial body." *Sun Suites Holdings, LLC v. Bd. Of Aldermen of Town of Garner*, 139 N.C. App. 269, 271, 533 S.E.2d 525, 527 (citation omitted), *disc. review denied*, 353 N.C. 280, 546 S.E.2d 397 (2000). A board of adjustment's decision "shall be subject to review of the superior court in the nature of certiorari in accordance with G.S. 160A-388." N.C. Gen. Stat. § 160A-381(c) (2017). We have described the superior court's role in reviewing the decision of a local board as follows:

> (1) Reviewing the record for errors in law,
>
> (2) Insuring that procedures specified by law in both statute and ordinance are followed,
>
> (3) Insuring that appropriate due process rights of a petitioner are protected including the right to offer evidence, cross-examine witnesses, and inspect documents,
>
> (4) Insuring that decisions of town boards are supported by competent, material and substantial evidence in the

whole record, and

> (5) Insuring that decisions are not arbitrary and capricious.

*Dellinger v. Lincoln Cty.*, __ N.C. App. __, __, 789 S.E.2d 21, 26 (citation omitted), *disc. review denied*, 369 N.C. 190, 794 S.E.2d 324 (2016).

"If a petitioner appeals an administrative decision on the basis of an error of law, the trial court applies *de novo* review; if the petitioner alleges the decision was arbitrary and capricious, or challenges the sufficiency of the evidence, the trial court applies the whole record test." *Premier Plastic Surgery Ctr., PLLC v. Bd. of Adjustment for Town of Matthews*, 213 N.C. App. 364, 367, 713 S.E.2d 511, 514 (2011) (citation and quotation marks omitted). A reviewing court "does not make findings of fact, but instead, determines whether the Board of Adjustment made sufficient findings of fact which are supported by the evidence before it." *Crist v. City of Jacksonville*, 131 N.C. App. 404, 405, 507 S.E.2d 899, 900 (1998) (citation omitted).

Our Supreme Court has held that "[t]he rules applicable to the construction of statutes are equally applicable to the construction of municipal ordinances." *Cogdell v. Taylor*, 264 N.C. 424, 428, 142 S.E.2d 36, 39 (1965) (citation omitted). A basic tenet of statutory construction is that "[w]here the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must construe the statute using its plain meaning." *Burgess v. Your House of Raleigh, Inc.*, 326 N.C. 205, 209, 388 S.E.2d 134, 136 (1990). Furthermore, courts should "give effect to the

words actually used in a statute and should neither delete words used nor insert words not used in the relevant statutory language during the statutory construction process." *Midrex Techs., Inc., v. N.C. Dep't of Revenue*, 369 N.C. 250, 258, 794 S.E.2d 785, 792 (2016) (citation and quotation marks omitted).

As noted above, the HILU ordinance provides that "[t]he location of asphalt plants . . . shall not be within 1,500 feet of a public or private educational facility[.]" The version of the HILU ordinance in effect during the time period relevant to this appeal defined "educational facility" as follows:

> Educational Facility — Includes elementary schools, secondary schools, community colleges, colleges, and universities. Also includes any property owned by those facilities used for educational purposes.[1]

Thus, the first sentence of the definition lists five specific entities. Each of the five is a specific type of school or educational institution. Under the *expressio unius est exclusio alterius* canon of statutory construction, "the expression of one thing implies the exclusion of another." *Jeffries v. Cty. of Harnett*, __ N.C. App. __, __, 817 S.E.2d 36, 50 (2018). *See Evans v. Diaz*, 333 N.C. 774, 780, 430 S.E.2d 244, 247 (1993) ("[W]hen a statute lists the situations to which it applies, it implies the exclusion of situations not contained in the list." (citation omitted)); *Jolly v. Wright*, 300 N.C. 83,

---

[1] The HILU ordinance has since been amended on multiple occasions. The version of the ordinance currently in effect defines an "educational facility," in pertinent part, as "[e]lementary schools, secondary schools, community colleges, colleges, and universities, including support facilities such as administration for all of the preceding."

89, 265 S.E.2d 135, 141 (1980) ("[W]hen certain things are specified in a statute, an intention to exclude all others from its operation may be inferred." (citation omitted)), *overruled on other grounds by McBride v. McBride*, 334 N.C. 124, 431 S.E.2d 14 (1993). Thus, because the Gragg Center is not an elementary school, a secondary school, a community college, a college, or a university, it does not come within the first sentence of the definition.

The second sentence of the definition provides that the meaning of the term "educational facility" extends to "any property owned by *those facilities* used for educational purposes." (Emphasis added.) Clearly, the phrase "those facilities" refers to the entities listed with specificity in the first sentence. It is undisputed that the Gragg Center is not owned by an elementary school, secondary school, community college, college, or university and is instead owned by the Watauga County Board of Education. Thus, the Gragg Center likewise fails to qualify as an "educational facility" under the second sentence of the definition.

Watauga County nevertheless argues that a ruling that the Gragg Center does not fit within the definition of "educational facility" would "subvert the goal and spirit of the HILU" and "create an absurd or illogical result." It further contends that although the Gragg Center is not itself a school, its various uses are essential to the operation of the Watauga County Schools system.

The County's argument, however, runs counter to basic principles of statutory construction. As explained above, it is axiomatic that where the language of a statute or ordinance is clear and unambiguous this Court "does not engage in judicial construction but must apply the statute to give effect to the plain and definite meaning of the language." *Carolina Power & Light Co. v. City of Asheville*, 358 N.C. 512, 518, 597 S.E.2d 717, 722 (2004) (citation and quotation marks omitted). Given that the Gragg Center is neither one of the entities listed in the first sentence of the definition nor is it property owned by one of those entities, our analysis must necessarily end there.

While the County asks us to accept its representation that the definition contained in the ordinance was intended to encompass buildings such as the Gragg Center, our determination of the intent underlying this provision must be based on the words actually contained therein. *See Lenox, Inc. v. Tolson*, 353 N.C. 659, 664, 548 S.E.2d 513, 517 (2001) ("If the language of a statute is clear, the court must implement the statute according to the plain meaning of its terms[.]" (citation omitted)). This Court lacks the authority to engage in the exercise of guessing what additional types of buildings the County *might* have meant to encompass within this definition where doing so would require us to substitute language of our own choosing for the words actually used in the ordinance itself. *See In re Banks*, 295 N.C. 236, 239, 244 S.E.2d 386, 388-89 (1978) ("When the language of a statute is clear and

unambiguous . . . the courts must give the statute its plain and definite meaning, and are without power to interpolate, or superimpose, provisions and limitations not contained therein." (citation omitted)).

Moreover, with regard to the County's position that the adoption of the interpretation advocated by Appalachian would lead to an absurd result, this argument fails for two reasons. First, there is nothing "absurd" about a local government's decision to prohibit the placement of high impact land uses near actual schools that serve as places of instruction for students on a regular basis while permitting such uses near primarily administrative facilities such as the Gragg Center.

Second, and more fundamentally, our Supreme Court has made clear that courts are not permitted to avoid a so-called "absurd result" by rewriting a statute or ordinance in order to reach a more "logical" meaning. *See Wiggs v. Edgecombe Cty.*, 361 N.C. 318, 322, 643 S.E.2d 904, 907 (2007) (the clear meaning of a statute "may not be evaded by . . . a court under the guise of construction. We will not engage in judicial construction merely to assume a legislative role and rectify what defendants argue is an absurd result." (internal citations and quotation marks omitted)).

Finally, the County makes the argument that a ruling in favor of Appalachian would render the second sentence of the definition meaningless because elementary and secondary schools are not authorized to own property. As an initial matter,

counsel for Appalachian conceded at oral argument that colleges and universities are, in fact, legally permitted to own property. Thus, by Appalachian's own admission, the second sentence actually does possess some meaning in that property owned by those entities would fall within the definition as long as said property was being used for educational purposes.

This argument fails for a more basic reason as well. Even if the second sentence of the definition did not actually encompass any additional specific locations within Watauga County other than those enumerated in the first sentence, this Court would still lack a license to engage in the legislative function of rewriting this sentence in accordance with our own subjective belief as to what other locations might be deserving of protection from nearby asphalt plants. *See Cochrane v. City of Charlotte*, 148 N.C. App. 621, 628, 559 S.E.2d 260, 264 ("It is critical to our system of government and the expectation of our citizens that the courts not assume the role of legislatures." (citation and quotation marks omitted)), *disc. review denied*, 356 N.C. 160, 568 S.E.2d 189 (2002).

The definition of "educational facility" in the HILU ordinance does not mention the Watauga County Board of Education. Had the County intended for any building owned by the Board of Education possessing some type of educational purpose to be encompassed within the ordinance's definition, it would have been a simple matter to say so in the definition itself. But language to this effect does not exist.

Were we to accept the County's invitation to effectively add new words to this provision of the ordinance, we would be creating a new definition out of whole cloth rather than interpreting the one that is currently before us. This we cannot do. Courts do not possess the authority to insert language into an ordinance or statute that *could* have been included therein but was not. *See Lunsford v. Mills*, 367 N.C. 618, 623, 766 S.E.2d 297, 301 (2014) ("[I]n effectuating legislative intent, it is our duty to give effect to the words actually used in a statute and not to delete words used or to insert words not used." (citation omitted)). Simply put, in construing the HILU ordinance this Court lacks the authority to add words that the drafters themselves left out.

The concurrence ultimately reaches the correct result in this case but does so by using a mode of statutory construction that is at odds with the rules of interpretation discussed above. Rather than apply the language that the drafters of the HILU ordinance actually used, the concurrence instead plucks out of thin air the phrase "physical locations" and makes it the focal point of its analysis — despite the fact that such a phrase appears nowhere in the definition of "educational facilities." Based largely on this invented terminology, the concurrence mistakenly concludes that the second sentence of the definition (1) lacks any meaning at all as actually worded; and (2) can only be given meaning by the addition of language the drafters themselves did not see fit to add.

With regard to the first proposition, the concurrence employs a mode of construction that can only be described as odd. While it is axiomatic that courts should strive to find meaning in a statutory provision based on the words used therein, *see State v. Williams*, 286 N.C. 422, 431, 212 S.E.2d 113, 119 (1975) ("[A] statute must be construed, if possible, so as to give effect to every part of it, it being presumed that the Legislature did not intend any of its provisions to be surplusage." (citation omitted)), the concurrence does the precise opposite — instead opting for a method of interpretation guaranteed to render the plain language of the second sentence of the definition at issue meaningless.

As for its second conclusion, by means of judicial sleight-of-hand the concurrence sees fit to change the phrase "property owned by [the entities listed in the first sentence]" to the quite different phrase "property owned by *the owners of* [the entities listed in the first sentence]." The concurrence's assertion of authority to add new language to the ordinance's definition under the guise of interpretation finds no refuge in the jurisprudence of our appellate courts. Moreover, its interpretation is rendered illogical by virtue of the fact that the Watauga County Board of Education *does not own* community colleges, colleges, or universities located within the county's borders.

The concurrence's assurance that its interpretation would give effect to Watauga County's "obvious intent" in drafting the HILU ordinance is also puzzling

since there is simply no evidence to suggest that this was, in fact, the County's intent. To the contrary, the plain language employed in the definition suggests that this was not the drafters' intent at all. Guided by nothing more than its own subjective belief as to what would have constituted a wise definition, the concurrence violates the cardinal rule of statutory construction that prohibits courts from assuming a legislative role. *See Thigpen v. Ngo*, 355 N.C. 198, 202, 558 S.E.2d 162, 165 (2002) ("When the language of a statute is clear and unambiguous, it must be given effect and its clear meaning may not be evaded by an administrative body or a court under the guise of construction." (citation and quotation marks omitted)).

* * *

Words matter — be they contained in an ordinance, statute, contract, will, deed, or any other document possessing legal significance. Our holding today is not the result of a hypertechnical reading of the HILU ordinance. Rather, it applies longstanding principles of statutory construction by relying on the ordinance's plain language, which simply does not lend itself to the interpretation sought by the County in this appeal. Accordingly, we hold that the trial court erred in affirming the Board's decision to uphold the denial of Appalachian's permit application.

## Conclusion

For the reasons stated above, we reverse the 8 September 2017 order of the trial court and remand for proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.

Judge ELMORE concurs.

Judge DILLON concurs in result only by separate opinion.

No. COA18-188 – APPALACHIAN MATERIALS, LLC V. WATAUGA CTY.

DILLON, Judge, concurring in result only.

## I. Background

Appalachian Materials, LLC, applied for a permit to build an asphalt plant within 1,500 feet of the administrative offices of the Watauga County Board of Education (the "BOE"). Watauga County denied the permit, in part, because its ordinances do not allow any property to be developed as an asphalt plant if that property is located within 1,500 feet of an "educational facility," concluding that the BOE property is an "educational facility" under the ordinance.

When Appalachian Materials applied for its permit, the term "educational facility" was defined by the County ordinance as follows:

> Educational facility – includes elementary schools, secondary schools, community colleges, colleges, and universities. Also includes any property owned by those facilities used for educational purposes.

I agree with the majority that the BOE property does not meet this definition of "educational facility." The majority, though, bases its conclusion on the fact that the BOE property is not "owned by [any of] those facilities " referenced in the first part of the definition. I base my conclusion, however, on the fact that the BOE property is not property "used for educational purposes."

## II. Rules of Construction

In construing a statute or ordinance, our Supreme Court has instructed that our "goal" is "to accomplish the legislative **intent**." *Wilkie v. Boiling Springs*, 370 N.C. 540, 547, 809 S.E.2d 853, 858 (2018) (emphasis added).

"The best indicia of that intent are **the language** of the [ordinance]." *Id.* (emphasis added). And the general rule is that "[w]here the language of the statute is clear and unambiguous, there is no room for judicial construction and the courts must construe the statute using **its plain meaning**." *Id.* (emphasis added).

However, our Supreme Court has also instructed that "a statute must be construed, if possible, **to give meaning and effect to *all* of its provisions**," and that an interpretation which would render a provision "**meaningless . . . is not permitted**." *HCA Crossroads v. N.C. Dept. of Hum. Res.*, 327 N.C. 573, 578, 398 S.E.2d 466, 470 (1990) (emphasis added).

For example, in *Teachy v. Coble Dairies*, our Supreme Court refused to construe the 1975 version of Rule 14(c) of our Rules of Civil Procedure by the plain meaning of certain words used by our General Assembly because "were [those words] interpreted strictly and literally, [the provision] would be nugatory." *Teachy v. Coble Dairies*, 306 N.C. 324, 330, 293 S.E.2d 182, 186 (1982). Rather, our Supreme Court determined that these words constituted a "clerical error" and that to apply a strict construction would "thwart the obvious legislative intent and [would] render [the act] meaningless." *Teachy,* 306 N.C. at 331, 293 S.E.2d at 186. The Court did not apply

the plain meaning, reasoning that construing an act in a manner which would render it meaningless "would be anomalous, aberrant, and abhorrent." *Id.*

### III. Analysis of the Watauga County Ordinance

The definition of "educational facility" is plainly describing physical locations; that is, physical locations near which an asphalt plant cannot be developed. The plain meaning of the word "facility" is *a physical location*; the term "facility" is never used in English parlance to describe *an entity* which owns a physical location.

The definition of "educational facility" is broken up into two parts.

The first part is plainly describing physical locations used either as an elementary or secondary school or as a college or university, near which an asphalt plant may not be developed. It is plainly *not* describing school entities in the abstract. For instance, the term "universities" as used here would include the Appalachian State University campus, not the University entity. I agree with the majority that the BOE property does not fit the first part of the definition of "educational facility." The BOE property is not a facility used as a school or college.

The second part further defines an "educational facility" as "property owned by those facilities [referenced in the first part] used for educational purposes." The majority reasons that the BOE property is not a "property owned by those facilities [referenced in the first part of the definition] because the BOE property is not owned

by an elementary or secondary school or by a college or university." I reason that the BOE property is not being "used for educational purposes."

I conclude that adopting a construction based on the plain reading of the language used in the second part would render the second part meaningless. Under North Carolina law, a real estate "facility" cannot own real property; only people and entities are capable of owning real property. The majority, though, suggests that a construction based on the plain language would not render the second part meaningless because some of the "facilities" in the first part are capable of owning property; for example, "universities" are capable of owning property. The majority essentially suggests, however, that the word "facilities" may be read to also refer to abstract entities, not just to physical locations. However, this suggestion ignores the plain meaning of the word "facilities." Further, it ignores a plain reading of the first part as referring only to physical locations, not to abstract entities. "Appalachian State University" may sometimes refer to a physical location in Boone: "I am heading to ASU this weekend to watch a football game." "Appalachian State University" may also refer an abstract entity: "I work for Appalachian State University." But the term "universities," as used in the first part, plainly refers only to physical locations, not to abstract entities.

Therefore, since construing the second part by giving the language used therein its plain reading would render the second part meaningless, as "facilities"

cannot own property, we must adopt a construction, if possible, to give effect to County's obvious intent.

Since "facilities" themselves are not capable of owning real estate, I conclude that the County's obvious intent was to include within the definition "property owned by [**the owners of**] the facilities [referenced in the first part]."  For example, the definition includes not only property used as an elementary and secondary school, but also other property owned by *the owner of* any elementary and secondary school used to educate students from that school.  Here, the BOE owns the public elementary and secondary schools in the County.  I conclude that the intent was to include within the scope of "educational facilities" not only the elementary and secondary school locations owned by the BOE, but also any other locations owned by the BOE where public school students participate in educational activities.

Under the majority's construction, "educational facilities" could only include off-site locations owned by a college, university, or private school entity.  Since public schools are not owned by separate school entities, but rather by the BOE, the majority's construction would not include any off-site facility used to educate students attending public schools.  I do not think it was the County's obvious intent to include only off-site facilities used to educate private school students.

In any event, I believe that the BOE property is not being used for "educational purposes" as that phrase is used in the ordinance.  The term "educational purposes"

5

is a bit ambiguous. If read broadly, "educational purposes" could include, for example, property used as a gravel pit owned by the BOE where the income generated was used to fund education. But to the extent the term is ambiguous, we are to construe it narrowly. *See Capricorn Equity Corp. v. Town of Chapel Hill*, 334 N.C. 132, 138-39, 431 S.E.2d 183, 188 (1993) ("Since zoning ordinances are in derogation of common-law property rights, limitations and restrictions not clearly within the scope of the language employed in such ordinances should be excluded from the operation thereof.").

I construe "educational purposes" narrowly, to include only those facilities which are primarily used for activities where students are present. Indeed, this construction fits the context: The first part of the definition generally describes locations *primarily used* for activities *where students are present*. The evidence in the record demonstrates that the BOE property is used primarily for administrative purposes, and that the BOE property is only sporadically used for events where students are present. Therefore, I concur in the majority's result.