IN THE SUPREME COURT OF NORTH CAROLINA

No. 120A22

Filed 20 October 2023

TOWN OF MIDLAND, a North Carolina municipal corporation

v.

TONEY L. HARRELL and T.L. HARRELL'S LAND DEVELOPMENT COMPANY,
INC., a North Carolina business corporation

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of
the Court of Appeals, 282 N.C. App. 354 (2022), affirming in part and reversing in
part orders entered on 17 August 2020 and 18 December 2020 by Judge Martin B.
McGee in the Superior Court, Cabarrus County, and remanding the case. Heard in
the Supreme Court on 14 March 2023.

> *Anthony Fox, Daniel Peterson, and Jasmine Little for plaintiff-appellee Town
> of Midland.*

> *Scarbrough, Scarbrough & Trilling, PLLC, by James E. Scarbrough and John
> F. Scarbrough, for defendants-appellants Toney L. Harrell and T.L. Harrell's
> Land Development Company, Inc.*

ALLEN, Justice.

The primary issue in this case is whether the Town of Midland satisfied certain
procedural requirements of state law and its own ordinances in filing a lawsuit
against defendant developers over their failure to repair the streets in a subdivision
located within the Town's corporate limits. We hold that the Town complied with the
relevant provisions, and we therefore affirm the judgment of the Court of Appeals.

**I. Background**

Defendants Toney L. Harrell and T.L. Harrell's Land Development Company are the developers of Bethel Glen, a residential subdivision located inside the corporate boundaries of the Town of Midland. In an earlier round of litigation, defendants challenged a notice of violation (NOV) issued by the Town's zoning administrator on 18 March 2014. *Harrell v. Midland Bd. of Adjustment* (*Midland I*), 251 N.C. App. 526, 2016 N.C. App. LEXIS, at *8–9 (2016) (unpublished). The NOV alleged that the subdivision's streets were "in a state of continuous deterioration" that could "pose a potential threat to public safety." According to the NOV, the poor condition of the streets violated the requirement in the Midland Development Ordinance (MDO) that developers "*maintain streets until acceptance by adoption of a resolution accepting the street(s) for public maintenance.*"

Defendants sought review by the Town's board of adjustment, which upheld the NOV. *Id.* at *9. After an appeal to the Superior Court, Cabarrus County, resulted in an order affirming the board's decision, defendants took their case to the Court of Appeals. *Id.* On 30 December 2016, the Court of Appeals issued its opinion in *Midland I*, affirming the trial court's order and concluding that, because the Town had never assumed responsibility for the subdivision's roads, defendants remained under a "continuing responsibility to maintain [those] roads." *Id.* at *17, *21. On 8 June 2017, this Court denied defendants' petition for discretionary review. *Harrell v. Midland Bd. of Adjustment*, 369 N.C. 751, 800 S.E.2d 418 (2017).

While defendants' appeal in *Midland I* was pending at the Court of Appeals,

the Town's zoning administrator issued civil citations to defendants on 14 October 2016, 10 December 2016, and 11 December 2016 imposing civil penalties of $100.00, $300.00, and $500.00, respectively. Each citation alleged that the roads in Bethel Glen remained in need of repair and stated that each day's continuing violation of the MDO constituted "a separate and distinct offense." Thereafter, the zoning administrator issued defendants a civil citation with a $500.00 civil penalty every day from 12 December 2016 until 16 January 2017.

On 17 January 2017, the zoning administrator sent defendants a demand letter informing them that they owed civil penalties totaling $18,900.00. The letter threatened defendants with litigation unless they paid the civil penalties and brought the subdivision's roads into compliance with the MDO within thirty days. Defendants took no action in response to the letter, and the zoning administrator issued additional citations.

On 22 June 2017, the Town filed suit against defendants in the Superior Court, Cabarrus County, seeking a mandatory injunction and an order of abatement requiring defendants to repair the subdivision's roads. The complaint further requested that the court order defendants to pay the Town a total of $97,400.00 in civil penalties, "plus interest, costs and attorneys' fees as allowed by law." In calculating defendants' civil penalties, the Town added to the $18,900.00 allegedly due as of 17 January 2017 further penalties of $500.00 per day for each day between 17 January 2017 and 22 June 2017, the filing date of the action. The parties

subsequently filed motions for summary judgment. Before the trial court ruled on the motions, defendants filed a motion to dismiss the complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Rules of Civil Procedure. The motion to dismiss asserted that the trial court lacked subject matter jurisdiction because the Town Council had not voted to authorize the lawsuit against defendants. On 10 September 2019, the Town Council passed a resolution "retroactively approv[ing] and ratif[ying] the filing of the Complaint effective June 22, 2017."

In two orders dated 17 August 2020, the trial court denied defendants' summary judgment motion but granted the Town's summary judgment motion and entered a mandatory permanent injunction and an order of abatement that essentially directed defendants to bring the roads in the Bethel Glen subdivision into compliance with standards promulgated by the North Carolina Department of Transportation. Defendants filed a notice of appeal to the Court of Appeals from those orders. They also filed a motion for relief with the trial court, again claiming that it lacked subject matter jurisdiction over the Town's complaint. The motion for relief further asserted that defendants were entitled to recover attorney's fees from the Town under N.C.G.S. § 6-21.7 because the Town had unlawfully continued to assess civil penalties while defendants' appeal in *Midland I* was pending.[1]

---

[1] In their motion for attorney's fees, defendants relied on the following language in N.C.G.S. § 6-21.7 (2020): "In any action in which a city or county is a party, upon a finding by the court that the city or county violated a statute or case law setting forth unambiguous limits on its authority, the court shall award reasonable attorneys' fees and costs to the party who successfully challenged the city's or county's action. . . ."

The trial court entered an order on 18 December 2020 denying the motion for relief and noting that the Town had agreed to dismiss all civil penalties assessed prior to this Court's 8 June 2017 denial of defendants' petition for discretionary review in *Midland I*. Defendants filed a notice of appeal from the trial court's order denying their motion for relief.

On 15 March 2022, a divided panel of the Court of Appeals affirmed "the trial court's entry of summary judgment in the Town's favor regarding civil penalties." *Town of Midland v. Harrell*, 282 N.C. App. 354, 370 (2022). The Court of Appeals majority rejected defendants' argument that the trial court lacked subject matter jurisdiction. Under the majority's reading of the MDO, the "Town Council was not required to adopt a resolution before the Town filed its complaint." *Id.* at 361–62.

The trial court's mandatory permanent injunction and abatement order did not survive appellate scrutiny, however. The Court of Appeals majority concluded that the order was not detailed enough to satisfy Rule 65(d) of the Rules of Civil Procedure, which requires "[e]very order granting an injunction . . . [to] be specific in terms" and to "describe in reasonable detail, and not by reference to the complaint or other document, the act or acts enjoined or restrained[.]" N.C. R. Civ. P. 65(d). The majority remanded the order to the trial court with instructions that it "make further findings of fact identifying the specific NCDOT standards that [defendants] ha[d] failed to meet and . . . provide a specific decree for repairs necessary to bring the roads into compliance." *Town of Midland*, 282 N.C. App. at 368.

Finally, the Court of Appeals majority reversed the trial court's denial of defendants' request for attorney's fees. The majority agreed with defendants that state law did not allow the Town to impose civil penalties while defendants' appeal of the NOV was pending.[2] *Id*. at 369. Although the Town later dismissed the penalties unlawfully assessed during that period, its action did "not relieve the Town of its liability [under N.C.G.S. § 6-21.7] for [defendants'] attorney's fees incurred contesting those penalties." *Id*. at 370. The majority therefore remanded the matter so that the trial court could "determine and make appropriate findings regarding what attorney's fees [defendants] reasonably incurred in challenging the civil penalties imposed during the pendency of their first appeal." *Id*.

The dissenting judge at the Court of Appeals would have held that the Town

---

[2] In reaching this conclusion, the majority relied on the version of N.C.G.S. § 160A-388(b1)(6) in effect during the pendency of defendants' appeal in *Midland I*: "An appeal of a notice of violation or other enforcement order stays enforcement of the action appealed from unless the official who made the decision certifies to the board of adjustment after notice of appeal has been filed that because of the facts stated in an affidavit, a stay would cause imminent peril to life or property or because the violation is transitory in nature, a stay would seriously interfere with enforcement of the ordinance." N.C.G.S. § 160A-388(b1)(6) (2017). The General Assembly subsequently repealed and recodified the provision as N.C.G.S. § 160D-405(f): "An appeal of a notice of violation or other enforcement order stays enforcement of the action appealed from and accrual of any fines assessed . . . ." An Act to Clarify, Consolidate, and Reorganize the Land-Use Regulatory Laws of the State, S.L. 2019-111, § 2.4, 2019 N.C. Sess. Laws 424, 459 (Reg. Sess. 2020). This language was further amended by S.L. 2020-25, §10, 2020 N.C. Sess. Laws 152, 165 (2019) and S.L. 2022-62, §59(a), 2022 N.C. Sess. Laws. 72, 103–04 (Reg. Sess. 2022) and currently reads: "An appeal of a notice of violation or other enforcement order to the board of adjustment and any subsequent appeal in accordance with [N.C.]G.S. [§] 160D-1402 stays enforcement of the action appealed from and accrual of any fines assessed during the pendency of the appeal or during the pendency of any civil proceeding authorized by law or related appeal." N.C.G.S. § 160D-405(f) (2023).

lacked standing to file its complaint against defendants because the Town Council did not adopt its resolution authorizing the lawsuit before the complaint was filed. *Id.* at 371, 376–77 (Tyson, J., concurring in part and dissenting in part). In reaching this conclusion, the dissenting judge noted that "subject matter jurisdiction is determined by 'the state of affairs existing at the time it is invoked.'" *Id.* at 376 (quoting *Shearon Farms Townhome Owners Ass'n II v. Shearon Farms Dev., LLC*, 272 N.C. App. 643, 655 (2020), *disc. rev. denied,* 377 N.C. 566 (2021)).

The dissenting judge agreed with the majority that the mandatory permanent injunction and abatement order did not satisfy Rule 65(d) and that the Town was liable for attorney's fees. *Id.* at 377–78, 380. He argued, though, that the Court of Appeals should reconsider whether defendants remained responsible for the roads in the Bethel Glen subdivision. *See id.* at 379 ("The Town has collected *ad valorem* taxes from [defendants] and the property owners of Bethel Glen subdivision since bringing the subdivision into the Town's limits. The Town cannot now shirk its maintenance and repair obligations for normal wear and tear to the streets and shift them onto [defendants].").

On 19 April 2022, defendants filed a notice of appeal with this Court based on the dissent in the Court of Appeals. *See* N.C.G.S. § 7A-30(2) (2021) ("[A]n appeal lies of right to the Supreme Court from any decision of the Court of Appeals rendered in a case . . . [i]n which there is a dissent when the Court of Appeals is sitting in a panel of three judges."). Because the dissenting judge agreed with the majority's decision to

remand the mandatory permanent injunction and abatement order and the attorney's

fees issue to the trial court, the only matters before us are (1) the trial court's subject

matter jurisdiction over the Town's complaint and (2) defendants' continued

responsibility for the roads in the Bethel Glen subdivision. *See* N.C. R. App. P. 16(b)

("When the sole ground of the appeal of right is the existence of a dissent in the Court

of Appeals, review by the Supreme Court is limited to a consideration of those issues

that are (1) specifically set out in the dissenting opinion as the basis for that dissent,

(2) stated in the notice of appeal, and (3) properly presented in the new briefs . . . filed

in the Supreme Court.").

## II. Standard of Review

"Because standing is a question of law, we review the issue de novo." *Violette

v. Town of Cornelius*, 283 N.C. App. 565, 569 (2022), *disc. rev. denied*, 384 N.C. 33

(2023). When reviewing a matter *de novo*, this Court "considers the matter anew and

freely substitutes its own judgment" for that of the lower courts. *In re Greens of Pine

Glen Ltd. P'ship*, 356 N.C. 642, 647 (2003).

## III. Analysis

In their principal brief to this Court, defendants contend that the trial court

should have dismissed the Town's lawsuit for lack of standing. According to

defendants, N.C.G.S. § 160A-12 required the Town Council to adopt a resolution

authorizing the lawsuit *before* the Town filed the complaint against defendants.

Defendants argue that, even if it were possible for the Town Council to delegate

approval authority to the zoning administrator, the MDO contains no such delegation. They observe that the particular MDO provision under which the Town proceeded does not expressly authorize the zoning administrator to initiate civil actions. Defendants further argue that they should no longer bear responsibility for the roads in the Bethel Glen subdivision. They allege that "the Town expressly agreed to take over maintenance of the roads once it had confirmation that the roads had been built to NCDOT standards [and t]he requested confirmation from NCDOT was provided to the Town in [a] district engineer's letter of April 25, 2006."

In arguing that it had standing to file suit against defendants, the Town points out that N.C.G.S. § 160A-12 allows a city council to act by ordinance *or* resolution. When viewed in context, the Town insists, the pertinent MDO provisions clearly did not require Town Council approval before the zoning administrator referred the matter of defendants' nonpayment of civil penalties to the Town's attorney for institution of a civil action. Additionally, because the Court of Appeals ruled in *Midland I* that defendants remained responsible for the roads in the Bethel Glen subdivision, the Town argues that defendants should be barred from raising that issue in this case.

## A. The Town's Standing to File a Civil Action Against Defendants

"Standing refers to whether a party has a sufficient stake in an otherwise justiciable controversy such that he or she may properly seek adjudication of the matter." *Am. Woodland Indus. v. Tolson*, 155 N.C. App. 624, 626 (2002). As we have

explained elsewhere, "[t]he standing requirements articulated by this Court are not themselves mandated by the text of the North Carolina Constitution." *Cmty. Success Initiative v. Moore*, 384 N.C. 194, 206 (2023). Rather, "[t]his Court has developed standing requirements out of a 'prudential self-restraint' that respects the separation of powers by narrowing the circumstances in which the judiciary will second guess the actions of the legislative and executive branches." *Id.* at 206–07 (quoting *Comm. to Elect Dan Forest v. Emps. Pol. Action Comm.*, 376 N.C. 558, 599 (2021)).

If a plaintiff does not have standing to assert a claim for relief, the trial court lacks subject matter jurisdiction over the claim. *Willowmere Cmty. Ass'n, Inc. v. City of Charlotte*, 370 N.C. 553, 561 (2018). "[S]tanding is measured at the time the pleadings are filed." *Quesinberry v. Quesinberry*, 196 N.C. App. 118, 123 (2009). In other words, a plaintiff must have standing at the time of filing to have standing at all. Subsequent events cannot confer standing retroactively. *See Simeon v. Hardin*, 339 N.C. 358, 369 (1994) ("When standing is questioned, the proper inquiry is whether an actual controversy existed 'at the time the pleading . . . is filed.' " (quoting *Sharpe v. Park Newspapers of Lumberton, Inc.*, 317 N.C. 579, 584 (1986))); *Sharpe*, 317 N.C. at 585 ("[T]he basic rule [is] that 'the jurisdiction of a court depends upon the state of affairs existing at the time it is invoked.' " (quoting *In re Peoples*, 296 N.C. 109, 144 (1978))).

In arguing that the Town lacked standing to file its complaint, both the dissent in the Court of Appeals and defendants emphasize that the Town Council did not

adopt a resolution authorizing the action until two years *after* the complaint was filed. *Town of Midland*, 282 N.C. App. at 377 (Tyson, J., concurring in part and dissenting in part). According to them, the Town's failure to obtain the Town Council's approval prior to filing deprived the trial court of subject matter jurisdiction over the complaint. We disagree.

"In North Carolina there is no legal distinction between a *city*, a *town*, or a *village*. Each is a *municipality* . . . ." David M. Lawrence, *An Overview of Local Government, in County and Municipal Government in North Carolina* 5 (2d ed. 2014). Municipalities are entirely creations of the General Assembly and have only those powers delegated to them by legislative enactments.[3] *King v. Town of Chapel Hill*, 367 N.C. 400, 404 (2014). Such legislative enactments can take the form of local acts or laws of statewide application.

Many of the statewide laws granting powers to municipalities reside in Chapter 160A (titled "Cities and Towns") of the General Statutes. *See, e.g.*, N.C.G.S. § 160A-174(a) (2021) ("A city may by ordinance define, prohibit, regulate, or abate acts, omissions, or conditions, detrimental to the health, safety, or welfare of its citizens and the peace and dignity of the city, and may define and abate nuisances."). At the time of the events giving rise to this litigation, Chapter 160A

---

[3] To create a municipality, "[t]he General Assembly incorporates an area by enacting a local bill consisting of a charter for the new city [or town or village] and a description of the . . . initial boundaries [of the city, town, or village]." Frayda S. Bluestein, *Incorporation, Annexation, and City-County Consolidation, in County and Municipal Government in North Carolina* 16 (2d ed. 2014).

included extensive provisions conferring an array of powers on municipalities over zoning and other land development matters. In 2019, the General Assembly enacted legislation recodifying those provisions as Chapter 160D (titled "Local Planning and Development Regulation"). *See* An Act to Clarify, Consolidate, and Reorganize the Land-Use Regulatory Laws of the State, S.L. 2019-111, 2019 N.C. Sess. Laws 424, 439–539, *as amended by* An Act to Complete the Consolidation of Land-Use Provisions into One Chapter of the General Statutes as Directed by S.L. 2019-111, as Recommended by the General Statutes Commission, S.L. 2020-25, 2019 N.C. Sess. Laws 152, 165 (Reg. Sess. 2020).

Chapter 160A likewise endows municipalities with substantial authority to enforce their ordinances through criminal or civil proceedings. In general, if the text of an ordinance so provides, a violation of the ordinance constitutes a Class 3 misdemeanor. N.C.G.S. §§ 14-4(a), 160A-175(b) (2021). On the civil side, "[a]n ordinance may provide that violation [of its requirements] shall subject the offender to a civil penalty to be recovered by the [municipality] in a civil action in the nature of debt if the offender does not pay the penalty within a prescribed period of time." *Id.* § 160A-175(c). When an ordinance prohibits a condition on or use of real property, a municipality may respond to violations by asking the proper court to issue "a mandatory or prohibitory injunction and order of abatement commanding the defendant to correct the unlawful condition . . . or cease the unlawful use." *Id.* § 160A-175(e). Because an ordinance "may provide, when appropriate, that each day's

continuing violation shall be a separate and distinct offense," an offender who refuses to correct a violation risks multiple criminal charges and mounting civil penalties. *Id.* § 160A-175(g).

Of particular importance to this case are the mechanisms by which municipalities may exercise the regulatory and enforcement powers bestowed on them by the General Assembly. According to N.C.G.S. § 160A-12, "[a]ll powers, functions, rights, privileges, and immunities of the corporation shall be exercised by the city council and carried into execution as provided by the charter or the general law." N.C.G.S. § 160A-12 (2023). When "[a] power, function, right, privilege, or immunity . . . is conferred or imposed by charter or general law without directions or restrictions as to how it is to be exercised or performed[, it] shall be carried into execution as provided by ordinance or resolution of the city council." *Id.*

In arguing that N.C.G.S. § 160A-12 required the Town Council to adopt a resolution approving the lawsuit against defendants, both the dissent in the Court of Appeals and defendants cite *State ex rel. City of Albemarle v. Nance*, 266 N.C. App. 353 (2019). There a private attorney claiming to represent the city filed a lawsuit against the defendants alleging that their hotel constituted a public nuisance under Chapter 19 of the General Statutes. *City of Albemarle*, 266 N.C. App. at 354. The trial court granted the defendants' motion to dismiss the lawsuit because the lawsuit had not been authorized by a vote of the city council. *Id.* at 355. A panel of the Court of Appeals unanimously affirmed. *Id.* at 360–62. The city's ordinances stated that "the

Council" could employ outside legal counsel. *Id.* at 359. Reading this ordinance provision alongside N.C.G.S. § 160A-12, the Court of Appeals concluded that, "[i]n order to bring suit through outside counsel, the city council must adopt a resolution." *Id.* at 361. Inasmuch as "[t]he City failed to follow the requirements of the statutes and ordinances in effect or to provide evidence of outside counsel's authority to file suit on its behalf . . . [t]he trial court properly concluded [that] it lacked subject matter jurisdiction to address the City's claims against the [defendants]." *Id.* at 362.

This Court is not bound by *City of Albemarle*, but we do not read that decision to hold that a municipality's elected governing board must always act by resolution to authorize a lawsuit. Section 160A-12 allows the board to act "by ordinance *or* resolution." (Emphasis added.) As the Court of Appeals majority in this case correctly remarked, the city lost in *City of Albemarle* because, "*[p]ursuant to its ordinances*, [the city council] was required to adopt a resolution to bring suit through outside counsel." *Town of Midland*, 282 N.C. App. at 362 (emphasis added). Hence, even if we assume that *City of Albemarle* was rightly decided, no resolution by the Town Council was needed to authorize the lawsuit in this case if the MDO allowed the Town to file suit against defendants without one. We must therefore turn our attention to the text of the MDO.

"The rules applicable to the construction of statutes are equally applicable to the construction of municipal ordinances." *Cogdell v. Taylor*, 264 N.C. 424, 428 (1965). Accordingly, when a court is called upon to interpret a municipal ordinance,

-14-

"[t]he basic rule is to ascertain and effectuate the intention of the municipal legislative body." *George v. Town of Edenton*, 294 N.C. 679, 684 (1978). If the words of the ordinance "are plain and unambiguous, the court need look no further" in search of legislative intent. *Westminster Homes, Inc. v. Town of Cary Zoning Bd. of Adjustment*, 354 N.C. 298, 304 (2001). On the other hand, "if the language is unclear, judicial construction may be required." *Id.* Judicial construction typically involves examining the ordinance's other provisions or the text of related ordinances for evidence of what the ambiguous provision was intended to accomplish. *See George*, 294 N.C. at 684 ("We must therefore consider this section of the ordinance as a whole, and the provisions *in pari materia* must be construed together[.]" (citations omitted)).

Here the key MDO provision in dispute reads in pertinent part:

> If payment [of a civil penalty] is not received or equitable settlement reached within thirty (30) days after demand for payment is made, the matter *shall be referred* to legal counsel for institution of a civil action in the appropriate division of the General Courts of Justice for recovery of the civil penalty. Provided, however, if the civil penalty is not paid within the time prescribed, the *Planning, Zoning, & Subdivision Administrator* may have a criminal summons or warrant issued against the violator.

Town of Midland, N.C., Dev. Ordinance art. 23, § 23.7-6 (2021) [hereafter nonpayment provision] (first emphasis added).

The use of the passive voice in the first sentence of the nonpayment provision creates the need for judicial interpretation. The first sentence declares that at a certain point the matter of nonpayment "shall be referred" to legal counsel for the

filing of a lawsuit, but the text does not expressly assign responsibility for making the referral. *Id.* Given this omission, we must look to other parts of the MDO for guidance as we attempt to identify which official, if any, the Town Council contemplated would make the referral.

When the nonpayment provision's first and second sentences are read together, they strongly imply that the duty of making the referral belongs to the zoning administrator. The second sentence endows the zoning administrator with discretion over whether to pursue criminal charges against offenders who fail to pay their civil penalties. This is significant authority that the Town Council cannot have granted lightly. Unquestionably, then, the Town Council had the zoning administrator in mind when it adopted the nonpayment provision.

Other sections in Article 23 (titled "Administration and Enforcement") of the MDO reinforce this view. Perhaps most tellingly, subsection 23.2-1 provides: "*Unless specifically set forth otherwise in this ordinance*, the Town of Midland [zoning administrator] shall be the Enforcement Officer *with the duty of administering and enforcing the provisions of this Ordinance.*" *Id.* § 23.2-1 (emphases added). Consistent with this general assignment of responsibility, the zoning administrator's primary duties listed in subsection 23.2-2 include "enforc[ing] the provisions of [Article 23]" and "us[ing] the remedies provided in [Article 23] to gain compliance." *Id.* § 23.2-2(H), (J). The act of referring nonpayment of civil penalties to the Town's attorney for the institution of a civil action certainly qualifies as an attempt to enforce Article 23 and

obtain compliance with its provisions. Since the nonpayment provision does not direct anyone else to make the referral mandated by its first sentence, the duty of making that referral lies by default with the zoning administrator.

In arguing to the contrary, defendants assert *expressio unius est exclusio alterius*, "*i.e.*, the expression of one thing is the exclusion of another." *Baker v. Martin*, 330 N.C. 331, 337 (1991). Under this canon of statutory construction, "when a statute lists the situations to which it applies, it implies the exclusion of situations not contained in the list." *Evans v. Diaz*, 333 N.C. 774, 780 (1993). Defendants note that various provisions in Article 23 expressly invest the zoning administrator with specific enforcement powers and duties. *E.g.*, Town of Midland, N.C., Dev. Ordinance art. 23, §§ 23.6-3 (zoning administrator may deny permits), 23.6-4 (zoning administrator may condition permits), 23.6-5 (zoning administrator may issue stop work orders), 23.6-6 (zoning administrator may revoke permits), 23.7-5 (zoning administrator must make written demand for payment of civil penalty). Consequently, according to defendants, "[h]ad the Town Council desired to delegate its authority to institute civil actions in zoning matters, it could have easily done so in the same manner as the other tasks assigned to the Zoning Administrator."

Canons of construction are interpretive guides, not metaphysical absolutes. They should not be applied to reach outcomes plainly at odds with legislative intent. We disagree with defendants' application of *expressio unius est exclusio alterius* to the nonpayment provision, in part because, as we have already remarked, subsection

23.2-1 unambiguously charges the zoning administrator with administering and enforcing Article 23 except where Article 23 expressly assigns a particular task to someone else. *See, e.g., id.* § 23.5-4 (board of adjustment to hear appeal from NOV within thirty-six days of receiving appeal in writing). Moreover, defendants ignore the fact that other sections in Article 23 also employ the passive voice. For instance, under subsection 23.7-2, if a person who has violated the MDO "fails to take corrective action within the prescribed period of time, a civil penalty *may be imposed . . .* in the form of a citation." *Id.* § 23.7-2 (emphasis added). Were we to adopt the same approach to subsection 23.7-2 that defendants urge for the nonpayment provision, we would have to conclude that the use of the passive voice in subsection 23.7-2 means that the zoning administrator is prohibited from imposing the civil penalties authorized therein, a thoroughly implausible interpretation.

In their reply brief to this Court, defendants quote N.C.G.S. § 160D-402, which the General Assembly enacted in 2019 as part of its recodification of the statutes governing local government regulation of land development. Although N.C.G.S. § 160D-402 did not become law until after the Town filed its lawsuit in 2017, defendants maintain that the statute should inform our analysis.

Section 160D-402 sets out a nonexclusive list of duties that may be assigned to employees charged with administering and enforcing a county or municipal development ordinance. These duties include "recommending bringing judicial actions against actual or threatened violations." N.C.G.S. § 160D-402(b) (2021).

According to defendants, "[b]y enacting N.C.G.S. § 160D-402, the General Assembly has expressed its intent that municipalities may only delegate to zoning administrators the authority to '<u>recommend</u> bringing judicial actions.' The Town has never had the authority to delegate to its Zoning Administrator the power to unilaterally initiate judicial actions."

Accepting defendants' reading of N.C.G.S. § 160D-402 for the sake of argument, we perceive no grounds for holding that the Town lacked standing to sue defendants. The nonpayment provision does not endow the zoning administrator with "the power to unilaterally initiate" civil actions to recover unpaid civil penalties. Under its terms, the zoning administrator merely refers the matter to the Town's attorney. It is the nonpayment provision itself—not the zoning administrator—that requires the Town's attorney to file a complaint against the offender.

The MDO authorized the Town to file suit against defendants without first obtaining approval of the Town Council. There is no merit to defendants' argument that the Town lacked standing.

## B. Responsibility for Road Maintenance in Bethel Glen

As explained above, a different panel of the Court of Appeals concluded in *Midland I* that defendants remained responsible for maintaining the roads in the Bethel Glen subdivision inasmuch as the Town "had not taken [that] responsibility . . . from [defendants]." *Midland I*, 2016 N.C. App. LEXIS 1351, at *17. Here the dissenting judge at the Court of Appeals attempted to revive the issue of

defendants' ongoing responsibility for the roads, and defendants in their primary brief to this Court argue that the Court of Appeals majority erred by continuing to impose that duty on them.

The Court of Appeals majority considered itself bound by the earlier panel's ruling, observing that the panel had based its decision "on the same record relied upon by our dissenting colleague." *Town of Midland*, 282 N.C. App. at 365.

> This Court previously upheld the Town's notice of violation against [defendants] and concluded [defendants] have an "ongoing obligation to maintain the subdivision streets pursuant to [Town] ordinance." *In re Harrell*, 251 N.C. App. 526, 2016 WL 7984233, at *5 (emphasis added). This Court's prior determination that [defendants], and not the Town, are obligated to maintain the subdivision roads until the Town has approved a petition by [defendants] to assume responsibility, is binding on our decision today. *See N.C. Nat'l Bank v. Va. Carolina Builders*, 307 N.C. 563, 567, 299 S.E.2d 629, 631-32 (1983) ("Once a panel of the Court of Appeals has decided a question in a given case that decision becomes the law of the case and governs other panels which may thereafter consider the case. Further, since the power of one panel of the Court of Appeals is equal to and coordinate with that of another, a succeeding panel of that court has no power to review the decision of another panel on the same question in the same case.").

*Id.* (third alteration in original).

We agree with the Court of Appeals majority that it was bound by *Midland I*. Nothing in the record indicates that the Town agreed to accept responsibility for the roads in the Bethel Glen subdivision after the panel in *Midland I* issued its decision in 2016. Furthermore, the question of defendants' ongoing responsibility for the roads was not properly before the Court of Appeals in this case because defendants did not

argue it in their brief to that tribunal. *See* N.C. R. App. P. 28(a) ("The scope of review on appeal is limited to issues so presented in the several briefs. Issues not presented and discussed in a party's brief are deemed abandoned.").

## IV. Conclusion

The Town complied with state law and the MDO when it filed suit against defendants over their failure to maintain the roads in the Bethel Glen subdivision. The Court of Appeals majority rightly determined that it was bound by the prior decision of another panel holding defendants responsible for those roads. We therefore affirm the judgment of the Court of Appeals.

AFFIRMED.

Justice RIGGS did not participate in the consideration or decision of this case.